## Tahiti Bar, Inc. Liquor License Case.
## Lehigh Casino, Inc. Liquor License Case.

Argued January 15, 1959. Before JONES, C. J., BELL, MUSMANNO, JONES and COHEN, JJ.

*Edwin P. Rome,* with him *Morris L. Weisberg,* and *Blank, Rudenko, Klaus & Rome,* for appellant.

*Lois G. Forer,* Deputy Attorney General, with her *George G. Lindsay,* Assistant Attorney General, *Russell C. Wismer,* Special Assistant Attorney General, and *Thomas D. McBride,* Attorney General, for Pennsylvania Liquor Control Board, appellee.

*Stanley M. Greenberg,* with him *Bernard S. Ochman,* for appellant.

*Russell C. Wismer,* Special Assistant Attorney General, with him *Horace A. Segelbaum,* Assistant Attorney

General, and *Thomas D. McBride,* Attorney General, for appellee.

OPINION BY MR. JUSTICE BENJAMIN R. JONES, March 25, 1959:

These appeals challenge the legality and propriety of the action of the Pennsylvania Liquor Control Board (herein called the Board) in suspending[1] the liquor licenses and amusement permits of the appellants, Tahiti Bar, Inc. and Lehigh Casino, Inc., for alleged violations of the Liquor Code[2] and a regulation of the Board enacted pursuant thereto. The citations upon which the suspensions were based charged that appellants "1. . . . by [their] servants, agents or employes permitted lewd, immoral and/or improper entertainment on the licensed premises . . ." in violation of section 493 of the Code, and "2. . . . by [their] servants, agents or employes permitted entertainers to contact and/or associate with patrons on the licensed premises . . ." in violation of the Board's Regulation 110. The suspensions were affirmed on separate appeals to the Court of Quarter Sessions. for the County of Philadelphia and the Superior Court.[3] Because of the important constitutional issues raised by appellants, we granted an allocatur.[4]

---

[1] The Board suspended Lehigh Casino's liquor license and amusement permit for a period of sixty days, Tahiti Bar's liquor license and amusement permit for a period of forty days.

[2] Act of April 12, 1951, P. L. 90, art. I, §101 *et seq.,* 47 PS §1-101, as amended.

[3] 186 Pa. Superior Ct. 214, 223, 142 A. 2d 491, 495.

[4] The appeals were argued jointly before this Court. Counsel for Tahiti Bar directed his argument primarily towards attacking Section 493 of the Liquor Code; counsel for Lehigh Casino urged the illegality of Regulation 110. For this reason, and because identical constitutional issues are raised, both appeals will be disposed of in a single opinion.

We will initially consider appellants' objections to Section 493 of the Code. Section 493 (47 PS §4-493) provides in material part that it shall be unlawful "(10) . . . for any licensee, under any circumstances, to permit in any licensed premises *any lewd, immoral or improper* entertainment, regardless of whether a permit to provide entertainment [required by this section] has been obtained or not . . . Any violation of this clause shall . . . subject the licensee *to suspension* or revocation *of his permit and his license."* (Emphasis supplied) Enforcement officers of the Board stated that they visited the Tahiti Bar on April 3, 1956 and April 4, 1956. They testified in substance that on those two occasions they observed seven "strip acts" which involved the removal of substantially all of the female performers' apparel, and that "bumps and grinds" were performed by "moving the lower part of [their] body backwards and forward [in] both a fast and slow motion." The same officers visited the Lehigh Casino on May 24, 1956 and May 26, 1956. The performances were similar to those observed at the Tahiti Bar. Neither appellant contradicted nor questioned the enforcement officers' factual description of the performances. Appellants admit that the performances in both establishments were almost identical, involving in some instances, the same performers.

Appellants urge that Section 493 violates the First and Fourteenth Amendments of the U. S. Constitution[5] in that it abridges freedom of speech and expression and

---

[5] "Congress shall make no law . . . abridging the freedom of speech, or of the press . . ." U. S. CONST. amend. I. ". . . No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U. S. CONST. amend. XIV, §1.

that the terms "lewd, immoral and/or improper" are so vague and indefinite as to permit punishment for incidents falling fairly within the protection of free speech in contravention of the *due process* clause of the Fourteenth Amendment. Appellants assume, without discussion, that Section 493 is primarily directed toward prohibiting and restricting certain types of entertainment when such entertainment falls within the term expression as included within the free speech guarantee of the First and Fourteenth Amendments. In so doing, appellants misconceive the basic issue upon which the validity of Section 493 rests. The significant and determinative question is whether or not a state in *its regulation of the privilege of dispensing alcoholic beverages* may condition that privilege by prohibiting types of conduct and action that in another setting might be constitutionally protected. It is within this narrow framework that Section 493 must be reviewed.

There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. See: *Goesaert v. Cleary,* 335 U.S. 464, 465, 69 S. Ct. 198. Bearing in mind the "alleged noxious qualities and extra-ordinary evils" traditionally assigned to the use of alcoholic beverages, it is no longer open to question that a state may prohibit the manufacture, gift, purchase, sale, possession or transportation of alcoholic beverages within its borders. This power of prohibition includes the lesser power of regulation, and a state may adopt such measures as are reasonably appropriate or needful to render the exercise of that power effective. See: *Crane v. Campbell,* 245 U.S. 304, 38 S. Ct. 98 [and cases therein cited]; *State Board of Equalization of California et al. v. Young's Market Co. et al.,* 299 U.S. 59, 63, 57 S. Ct. 77; *Ziffrin v. Reeves,* 308 U.S.

132, 138, 60 S. Ct. 163. A state may, and generally does, require a license conditioned upon compliance with certain specified general requirements and personal qualifications before it will authorize an individual to sell alcoholic beverages. The license so issued is not absolute, and may be terminated or suspended by a state even though it may have been valid when initially issued. *Mahoney v. Joseph Triner Corp.*, 304 U.S. 401, 58 S. Ct. 952; *Premier-Pabst Sales Co. v. Grosscup*, 298 U.S. 226, 56 S. Ct. 754. Our present inquiry is directed toward determining whether or not a state in exercising this power is limited and restricted by the constitutional guarantee to each individual of his right to freedom of speech and expression.

In view of the historical background giving the state virtually an absolute control over the business of dispensing alcoholic beverages, the mere statement of the question compels a negative reply. An individual has no constitutional right to engage in the business of selling alcoholic beverages. The conduct of such a business is lawful only to the extent that it is made so by the Liquor Code. *Cavanaugh v. Gelder*, 364 Pa. 361, 364, 72 A. 2d 85, cert. denied, 340 U.S. 822; *Com. v. Bienkowski*, 137 Pa. Superior Ct. 474, 9 A. 2d 169. See: *Crane v. Campbell*, supra. Section 493 does not purport *per se to* control, regulate, sanction or censor the type of entertainment an establishment may present to its patrons. Section 493 merely provides that, if a certain type of entertainment is presented, the privilege of dispensing alcoholic beverages, to which an individual has no constitutional right, will be withdrawn. This does not constitute a mere semantic distinction. Section 493 is a regulation of the liquor business, and, as such, is required only to bear a reasonable relation to the evil sought to be controlled; the right of the individual to freedom of speech and expression is not

involved.[6] This section does not constitute an abridgement of the freedom of speech of the individual, but rather an abridgement of a privilege granted solely by the state. That in order to secure and retain this privilege, an individual may be incidentally required to modify the exercise of certain rights does not constitute an unconstitutional deprivation of those rights by the issuing authority.

In *Cavanaugh v. Gelder*, supra, this Court upheld a regulation of the Board which required liquor licensees to obtain an amusement permit as a prerequisite to the use of television in licensed establishments and to pay one-fifth of the annual liquor license fee for the privilege of presenting such entertainment. Although the issue of free speech was apparently not directly raised, the language of the opinion is most germane in rejecting appellants' present contention. We therein approved the following language of the court below (pp. 363-366): " '[Plaintiffs' contentions are] predicated on the fallacy that the license required for the privilege of providing televised, and no other form of entertainment, in establishments licensed under the Liquor Control Act is in a category entirely separate and distinct from the license required to be held for the privilege of selling intoxicating liquors. With this we cannot agree. On the contrary, it is the restaurant licensee who is granted under the Liquor Control Act the additional privilege, upon the payment of a further

---

[6] Appellants neither raised nor discussed the question as to whether a statute prohibiting "lewd, immoral or improper" entertainment in licensed establishments has a reasonable relation to the state's power to prohibit or regulate the liquor business for the protection of the health, safety, morals or general welfare of its citizens. Assuming the statute to be valid in all other respects, we have no doubt of its validity on this point. See: *Cavanaugh v. Gelder*, supra.

license fee, of offering certain forms of entertainment to his patrons. The legislature had the power to deny this additional entertainment privilege to the Board's licensees . . . just as under the Act of July 9, 1881, P.L. 162 (47 PS 181), it denied licenses for the sale of spirituous or malt liquors to proprietors of any theater, circus, museum or other place of amusement or to premises for the sale of such liquors which had a passage or communication to or with the same. . . . "The power of the state to regulate the sale of intoxicating liquors, and, in the exercise of that power, to authorize the granting of licenses to fit persons under such conditions as the legislature may impose is too well settled to be open to discussion." Accordingly, since the state may absolutely forbid or may license the sale of intoxicating liquors, it may impose such conditions upon the granting of licenses as it sees fit, and one who accepts such license must be deemed to consent to all proper conditions and restrictions which have been or may be imposed by the legislature in the interest of the public morals or safety. . . . "A transaction which is innocuous, if considered separately, may nevertheless be included in the scope of a general prohibitory measure designed to accomplish a purpose well within an admitted governmental power". . . . Admittedly, plaintiffs exhibit televised entertainment in their licensed establishments, presumably for the purpose of attracting and holding patrons and thereby increasing sales. *The legislature had the power to absolutely forbid, or to grant under specified conditions, licenses for the sale of intoxicating liquors. It had the power to absolutely forbid or to permit under specified conditions, entertainment in licensed establishments. . . .'* " (Emphasis supplied) Section 493 does not violate the right of free speech and expression as guaranteed by the First and Fourteenth Amendment of the United States Constitution.

Nor are we any more receptive to appellants' contentions that the terms "lewd, immoral and/or improper" are so vague and indefinite as to permit punishment for incidents falling fairly within the protection of free speech in contravention of the *due process* clause of the Fourteenth Amendment. The privilege of selling alcoholic beverages conditioned upon the presentation of a certain quality of entertainment in establishments where the privilege is exercised is not, as we have determined, an incident falling fairly within the protection of free speech. For this reason, appellants' assumption that a state, in conditioning the issuance of a liquor license, may only prohibit entertainment in a licensed establishment that comes within the term "obscenity" as delineated by the United States Supreme Court in interpreting the state's limitations under the First and Fourteenth Amendments is unwarranted.[7] If a state may prohibit *all* entertainment in an establishment where liquor is sold without violating the First and Fourteenth Amendments, it may fairly prohibit entertainment which may not necessarily be considered obscene without violating these same amendments.[8]

Nor, as appellants' intimate, are we confronted with a criminal statute requiring strictness of interpretation as to vagueness and indefiniteness under the *due process* clause of the Fourteenth Amendment, itself. A proceeding to suspend or revoke a license under the liquor laws has always been considered civil and administrative and not criminal in nature. *Summit Hill Rod*

---

[7] See, e.g., *Roth v. United States*, 354 U. S. 476, 77 S. Ct. 1304.

[8] Appellants also argue that "an obscenity statute where no right of trial by jury exists is probably unconstitutional." The present statute is not an obscenity statute. It is a Liquor Code providing for the revocation of a liquor license where a right of trial by jury has never been afforded. *Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board*, 292 Pa. 127, 140 A. 858.

*and Gun Club Liquor License Case,* 184 Pa. Superior
Ct. 584, 135 A. 2d 781; *Com. v. Lyons,* 142 Pa. Supe-
rior Ct. 54, 15 A. 2d 851; *Com. v. McMenamin,* 122 Pa.
Superior Ct. 91, 184 Atl. 679. As Mr. Justice DOUGLAS,
in rejecting a similar contention in upholding the sus-
pension of the license of a wholesale dealer under the
Federal Alcohol Administration Act (49 Stat. 977, 27
U.S.C. §201) in *Black v. Magnolia Liquor Co.,* 355 U.S.
24, 26, 78 S. Ct. 106, stated: "The Court was constrained
to read the Act narrowly, as it conceived it to be penal
in nature when it forfeited a permit to do business.
*But we deal here with remedial legislation whose lan-
guage should be given hospitable scope. . . . The will of
Congress would be thwarted if we gave the language
in question the strictest construction possible.*"[9] (Em-
phasis supplied)

Viewing the statutory terms "lewd, immoral and
improper" unfettered by the confining interpretive re-
quirements applied to criminal statutes and statutes
specifically designed to restrict freedom of speech and
expression, are these terms still too vague to conform
to the *due process* requirements of the Fourteenth
Amendment? We think not. In *Miller v. Strahl,* 239
U.S. 426, 36 S. Ct. 147, the validity of a state statute
requiring a hotel proprietor to do "all in [his] power"
to save guests from harm in case of fire, was upheld
against charges of being vague and indefinite. The
Court pertinently stated: (p. 434) "Rules of conduct
must necessarily be expressed in general terms and
depend for their application upon circumstances, and

---

[9] Section 205(f) of the Federal Act itself provides that "It
shall be unlawful . . . To publish or disseminate . . . any advertise-
ment of distilled spirits, wine, or malt beverages . . . unless such
advertisement is in conformity with such regulations . . . (4) as
will prohibit statements that are disparaging of a competitor's
product or are false, misleading, obscene, or indecent."

circumstances vary. It may be true, as counsel says, that 'men are differently constituted', some being 'abject cowards, and few only are real heroes;' that the brains of some people work 'rapidly and normally in the face of danger while other people lose all control over their actions.' It is manifest that rules could not be prescribed to meet these varying qualities. Yet all must be brought to judgment. And what better test could be devised than the doing of 'all in one's power' as determined by the circumstances?" Such rules of conduct requiring individuals to pattern their actions upon general conclusionary terms are legion. "Tests of this character are not metaphysical, subjective or abstract. They are practical, objective and concrete. The standard they establish is as certain as it is pragmatic. They allow a jury to determine, whether, in the light of past conduct, a person's actions meet the standard of reasonableness, practicability or the like. Standards of this type have been upheld constantly. [citing cases]" *Mallatt v. Ostrander Ry. & Timber Co.*, 46 F. Supp. 250, 254.

Under the liquor laws of this Commonwealth, licenses have been denied, suspended or revoked under such provisions as "upon any . . . sufficient cause shown"[10] and because the applicant was not a "person of good repute."[11] Even if it were conceded that the term "improper" is too vague to satisfy *due process* requirements, no such question would arise as to the terms "lewd and immoral." We believe that they are as precise, if not more so, than the instances cited. As

---

[10] *Reiter Liquor License Case*, 173 Pa. Superior Ct. 552, 98 A. 2d 465; *Com. v. Lyons*, 142 Pa. Superior Ct. 54, 15 A. 2d 851; *Revocation of Mark's License*, 115 Pa. Superior Ct. 256, 176 Atl. 254.

[11] *Rizzo Liquor License Case*, 174 Pa. Superior Ct. 457 101 A. 2d 180.

the Superior Court recently stated in *Com. v. Randall,* 183 Pa. Superior Ct. 603, 611, 133 A. 2d 276, allocatur refused, 184 Pa. Superior Ct. XXVIII, cert. denied 355 U.S. 954: "We have not so cast ourselves adrift from that code nor are we so far gone in cynicism that the word 'immoral' has no meaning for us. Our duty, as a court, is to uphold and enforce the laws, not seek reasons for destroying them. . . . Unless words of such seeming generality as 'moral' and 'immoral' were valid in statutes, government itself would become impossible. . . . The constitutionality of similar statutes defining crimes in general terms has been upheld by many courts where the general terms used in the particular statute get precision from common standards of morality prevalent in the community. . . . The term 'moral turpitude' has been held adequate to satisfy even the strict rule applicable to criminal statutes: Jordan v. DeGeorge, 341 U.S. 223, 232, 71 S. Ct. 703, 708. The term 'good moral character' as used in the immigration and nationality laws has frequently been applied by the courts. The measure applied is the 'common standard of morality' prevalent in the community: Estrin v. U. S., 2 Cir., 80 F. 2d 105; or the 'common conscience' of the community: Johnson v. U. S., 2 Cir., 186 F. 2d 588, 590." Viewed in its entirety, the terminology employed in Section 493 is neither vague nor indefinite and does not violate the *due process* clause of the Fourteenth Amendment.

Nor do we have any hesitation in affirming the determination of the courts below that the entertainment in question violated Section 493 in that it was "lewd, immoral and/or improper." Both the trial court and the Superior Court, equating the terms "lewd and immoral" with "obscene", found that the entertainment "was a predominant appeal to prurient interests." Thus both tribunals, applying the test associated with attempts on

the part of a state to restrict freedom of speech and expression, *which* we reiterate *is not presently involved,* found that appellants had violated Section 493 and that their licenses had been properly suspended. Our review of the record demonstrates the propriety and correctness of this determination. No purpose would be served by a repetition of the factual description of the entertainment contained in the record to demonstrate, as stated by the Superior Court, that it "was lewd or obscene as well as immoral under any definition of these terms."

Appellants next attack the validity and constitutionality of the Board's regulation 110, the relevant portion of which provides: "No licensee shall require, request or permit any person engaged directly or indirectly as an entertainer in the licensed establishment or in any room or place connected therewith, to contact or associate with the patrons in such establishment, room or place for any purpose whatsoever. . . ."[12] Appellants urge that such regulation is violative of an individual's right of freedom of speech and expression. The principles, hereinbefore discussed in connection with Section 493 of the Code, relating to the absolute control of the state over the use and sale of alcoholic beverages completely refute this contention. Inasmuch as the state, in the exercise of its police power, may interdict the presentation of *any* entertainment whatsoever in an establishment licensed to sell alcoholic beverages, it

---

[12] Section 110.02 D. There seems to be no doubt that the entertainers in both the Tahiti Bar and the Lehigh Casino did "contact" or "associate" with patrons. The enforcement officers testified that in the Tahiti Bar at least one female entertainer "solicited a drink of Canadian Club for which I paid ninety cents" and later associated with other patrons and that in the Lehigh Casino "We observed these girls [the entertainers] drinking and mingling with male patrons at the bar".

follows as a natural consequence that, if the state does permit entertainment, the state may prescribe the type and character of such entertainment as well as the conduct of the entertainers while on the licensed premises without impinging upon the constitutional guarantee of the right to freedom of speech and expression. The sole impediment to such prescription by regulation is that the regulation must bear a reasonable relationship to the eradication of the evils so frequently and historically associated with the use and sale of alcoholic beverages. The grant of the privilege to dispense alcoholic beverages upon the condition that certain acts and conduct on the part of employees or entertainers be prohibited while on the licensed premises is outside the orbit of the constitutional provisions which assure to individuals the right to freedom of speech and expression. When the licensee accepts the imposition of such a condition as a prerequisite to the grant of the license he, in effect, voluntarily acquiesces in the limitation of his right to freedom of speech and expression to the extent implicit in the acts and conduct prohibited by the terms of the condition. This is a classic example of an instance wherein the state, acting for the common good in an area traditionally productive of grave social evils, may impose upon those who seek and are granted the right to transact business in that area *reasonable* limitations and restrictions on acts and conduct which, historically, have given rise to these social evils without offending the constitutional provision as to freedom of speech and expression.

Appellants further argue that, inasmuch as the Board's regulation forbids a licensee to permit entertainers "contacting" or "associating" with male patrons on the licensed premises, the regulation goes far beyond Section 493(25) of the Code and constitutes an unlawful assumption of legislative power by the Board. Such an argument is unsound. Appellants misconstrue the

evils sought to be eradicated and err in their assumption that by this section the legislature intended to completely define *all* the regulation necessary to remedy the evils. Section 493(25) prohibits the *hiring* of female employees *"for the purpose of"* the enticement of customers, the encouragement of such customers to drink and the making of assignations for improper purposes. It is directed at only *one* type of conduct on the part of the licensee which may lead to the evils sought to be eliminated; evils historically associated with the sale of alcoholic beverages. To hold that the legislature, by such a statutory provision, intended thereby to preclude the Board from the adoption of any regulation prohibiting *other* types of conduct on the licensed premises which might lead to the same evils is clearly without justification. If appellants' theory be correct, a licensee could knowingly permit females to frequent and utilize the licensed premises for the purposes interdicted by the statute, or could knowingly permit a female employee *not hired for such purposes* to indulge in such practices, or could hire a male employee to encourage customers to drink liquor or make assignations for improper purposes for a female and the Board would be completely helpless to circumscribe such conduct by regulation. The legislature never intended by Section 493(25) either to define the whole area of regulations necessary to cope with the evils sought to be eliminated nor to place the Board within the "strait-jacket" of the narrow and confining limitations herein advocated by appellants.

Furthermore, the instant regulation is amply supported by statutory authority. The Code itself includes a legislative mandate that the courts give a liberal construction to its provisions.[13] The Code grants to the

---

[13] "This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health.

Board the power to adopt regulations on specific subjects among which is: "The issuance of licenses and permits and the conduct, management, sanitation and equipment of places licensed or included in permits" (Section 208(h), supra, 47 PS §2-208). After an enumeration of the Board's general powers, the Board was granted the power "to do all such things and perform all such acts as are deemed necessary or advisable for the purpose of carrying into effect the provisions of this act and the regulations made" without "in any way limiting or being limited" by the enumeration of the general powers conferred (Section 207(h), supra, 47 PS §2-207). Section 207(i), supra, further empowers the Board "From time to time, to make such regulations not inconsistent with this act as it may deem necessary for the efficient administration of [the] act". These provisions make evident the power of the Board to adopt any *reasonable* regulation the purpose of which is the elimination or restriction of the evils delineated in Section 493(25), without being held to have usurped the power of the legislature.

Appellants next question the reasonableness of this regulation in that it applies to *all* entertainers whereas, according to appellants, the sole evil to be remedied "is the enticing by females of unwary males in bars and of making assignations for improper purposes". Although we agree that the principal thrust of this regulation is to control the proscribed extra-curricular activities of female entertainers, we do not believe that *only* a female may be guilty of the conduct prohibited by this regulation nor that the Board is arbitrary in its assumption that a male entertainer might be guilty

peace and morals of the people of the Commonwealth . . . *and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose*". (Emphasis supplied). Section 104 of the Code, 47 PS §1-104.

of the same conduct. Nothing in this regulation offends our sense of its reasonableness in this respect.

Lastly, appellants urge that the regulation is too broad in its scope in that it prevents entertainers "from discussing innocent topics over a drink" with their husbands, wives, agents or friends, when this is not the evil sought to be remedied. Aside from the fact that there is no evidence whatsoever that such were the instant circumstances, we find no invalidity on this ground. A regulation which contained the excepted conduct on the part of the entertainers advocated by appellants would by its very terms doom the regulation and render impossible its execution and enforcement. While the difficulty of enforcement alone is insufficient to breathe validity into an otherwise invalid regulation, yet such difficulty is extremely significant when the instant regulation is viewed in its proper setting. This regulation is directed against a well-defined group, namely entertainers in licensed establishments; its purpose is the abolition of certain well-recognized and prevalent evils historically associated with the sale and consumption of alcoholic beverages on licensed premises. Bearing in mind the evils sought to be controlled, the obvious difficulty of enforcement of a regulation containing such an exception and the limited class against which the regulation is directed, we do not believe it is unreasonable to deprive that class of the right "to discuss innocent topics over a drink" with wives, husbands, agents or friends while employed as entertainers in licensed establishments.[14]

---

[14] The Lehigh Casino objects to the innuendo of the Superior Court that the entertainers in its establishment were "nude or scantily clothed" while mingling with patrons because of the Superior Court's *per curiam* affirmance of the suspension of its license and permit on the authority of the *Tahiti Bar* case where such conditions apparently existed. This factual difference is nei-

Both Sections 493 of the Code and regulation 110 of the Board are valid and constitutional. The action of the Board in suspending appellants' licenses and permits for the violations was properly sustained.[15]

Orders affirmed. Costs on appellants.

Mr. Justice McBRIDE took no part in the consideration or decision of this case.

---

ther material or significant for present purposes. That the entertainers be nude or scantily clothed is not a *sine qua non* for a violation of regulation 110.

[15] Appellants also argued that since regulation 110 relates only to amusement permits, only such permits should be suspended. Aside from the fact that the Board also found appellants had violated Section 493(10) which expressly provides for the suspension of a liquor license, Section 471 of the Code (47 PS §4-471) provides: "Upon learning of any violation of this act or any laws of this Commonwealth relating to liquor, alcohol or malt or brewed beverages, or of *any regulations* of the board adopted pursuant to such laws, . . . the board . . . if satisfied that any such violation has occurred . . . shall immediately suspend or revoke the license . . . ." (Emphasis supplied). As to appellants' "clear distinction" between a liquor license and an amusement permit, see *Cavanaugh v. Gelder*, supra.