## In Re: Luvera

*Richard D. Director*, for licensee.
*Joseph F. Lynch*, for Commonwealth.

GARDNER, *J.*, November 18, 1981—This is an appeal from the order of the Pennsylvania Liquor Control Board (board) imposing a fine of $300 upon Vincent Luvera, doing business as Naples Pizza (licensee). For the reasons stated in this opinion, we dismiss the appeal and affirm the order of the board below.

On August 20, 1980, the board cited licensee for violating Liquor Control Board Regulation 5.32(a), 40 Pa. Code 532(a). This regulation prohibits the playing of music on a loudspeaker inside the premises so loudly that the music can be heard outside.

The board held a hearing on January 21, 1981. On March 27, 1981, the board issued an opinion and order, finding that licensee violated the Liquor Code as alleged on July 30 and August 1, 1980. Accordingly, the board imposed a $300 fine.

On July 27, 1981, a hearing de novo, as required by the Liquor Code, Act of April 12, 1951, P.L. 90, art. IV, 471, as amended, 47 P.S. §4-471, was held by this court.

The scope of the court's authority in appeals from the board is clearly delineated in Pennsylania Li-

quor Control Board v. Latrobe Armed Service Association, 16 Pa. Commonwealth Ct. 199, 202-203, 329 A. 2d 549, 551 (1974):

" '. . . the lower court on appeal is required to hold hearings de novo, make its own findings of fact and conclusions of law and then in the exercise of its own discretion either sustain, reverse, or modify the action taken by the Board. The court is in no way limited either by statute or by case authority to a review of the Board's discretion, but rather makes a completely independent determination of all facets of the case in rendering its own decision. . . . It is now firmly established that the lower court must make findings of fact on the material issues different from those made by the Board before the action taken by the Board can be reversed or changed.' " (Citations omitted.) (Emphasis in original.)

It is the court's duty to evaluate the credibility of the witnesses, weigh the testimony and, as this proceeding is civil in nature, determine whether or not the violations charged have been established by a preponderance of the evidence: In re Moravian Bar, Inc., 200 Pa. Superior Ct. 231, 188 A. 2d 805 (1963); Smart, Inc. v. Pennsylvania Liquor Control Board, 35 Lehigh 346 (1973), aff'd, 16 Pa. Commonwealth Ct. 37, 328 A. 2d 923 (1974).

Where such charges have been so established by competent evidence, the court, even where it considers the penalty too severe, is powerless to reduce the penalty imposed by the board: In re Patty's Den, Inc., 32 Pa. Commonwealth Ct. 382, 379 A. 2d 659 (1977); Pennsylvania Liquor Control Board v. Washington Sporting Club, 13 Pa. Commonwealth Ct. 257, 320 A.2d 851 (1974).

An enforcement officer testified for the board at the hearing before this court. We find the testimony

of the officer credible. Based upon his testimony, we make the following findings of fact:

Licensee holds a restaurant liquor license and amusement permit. The licensed establishment is a pizza restaurant in Lehigh Shopping Center, Bethlehem, Lehigh County, Pa.

On Wednesday, July 30, 1980, the enforcement officer entered Naples Pizza at approximately 1:05 p.m. Approximately 20 to 25 patrons were present. Inside, the officer observed a record turntable attached to five loudspeakers.

Two of the speakers, each measuring approximately 12 inches by 12 inches, were located on the interior south wall. A third speaker, the same size, was located on the west wall. The fourth and fifth speakers, each measuring approximately two feet by four feet, were located on the east and west walls, respectively.

A female "go-go" dancer began dancing to the music at approximately 1:20 p.m. She went to the turntable and turned a knob, making the music louder.

Fifteen minutes later, at approximately 1:35 p.m., the officer departed the restaurant. He paced 15 feet to the east of the establishment, where he could hear the music clearly and distinctly. He also paced 15 feet to the south of the building, where he again heard the music clearly and distinctly. However, he could not hear the music 30 feet east, or 30 feet south, of the restaurant.

At approximately 1:45 p.m., the enforcement officer entered a commercial building, Transamerica Finance Consumer Company, which is connected to the south side of the restaurant by a party wall. He could hear the music loudly, clearly and distinctly inside the front, rear, and throughout the Transamerica building.

The officer departed the Transamerica building, and the area, at approximately 2:00 p.m.

On Friday, August 1, 1980, the enforcement officer returned to licensee's premises at approximately 12:30 p.m. At approximately 12:50 p.m. a female go-go dancer named "Charlie" put a record on the turntable, which was still hooked up to the same five loudspeakers.

At 1:06 p.m. the dancer asked the bartender to "turn up the music. I can't dance to it. It's too low." The bartender complied and turned up the music.

At 1:10 p.m. the officer left the pizza restaurant. Again he heard the music loudly and clearly outside from 15 feet east and 15 feet south of the establishment. Again, he entered the Transamerica building and heard the music clearly and distinctly in the front and rear of the building. He departed the area at 1:35 p.m.

The above findings of fact are not different on any material issue from those found by the board below. We find that these facts constitute a violation of Board Regulation 5.32(a), as did the board below.

Section 4-471 of the Liquor Code authorizes imposition of a fine for violation of "any regulations of the board. . . . " Liquor Control Board Regulation 5.32(a), provides:

"(a) No licensee shall use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard on the outside of the licensed premises."

Licensee does not dispute the facts as found by the board and by the court. He contends, however, that because Naples Pizza is in a commercial, not a residential, area, no members of the public were disturbed by the music. He states that the music

could not be heard very far from the premises, and that the violations were infrequent and of short duration. Therefore, he argues, the violations were "de minimis" and should be dismissed.

No provision in regulation 5.32(a) limits its applicability to residential areas. Nor is there a provision requiring a member of the public to be disturbed by the music. There is no provision requiring more than one offense to constitute a violation, nor a requirement that the music be heard a minimum distance from the establishment, nor that it continue for a certain period of time.

Moreover, we find no cases interpreting the regulation as mandating such requirements. On the contrary, the regulation was held to be valid, reasonable and constitutional as written in Hude v. Commonwealth of Pennsylvania, 55 Pa. Commonwealth Ct. 1, 423 A. 2d 15 (1980).

There is perhaps no other area of permissible state action where the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages: Hude, 55 Pa. Commonwealth Ct. at 3, 423 A. 2d at 16. Because the state may absolutely forbid, or may license, the sale of intoxicating liquors, it may impose such conditions upon the granting of licenses as it sees fit. One who accepts a license must be deemed to consent to all proper conditions and restrictions which have been imposed: In re Tahiti Bar, Inc., Liquor License Case, 395 Pa. 355, 363, 150 A. 2d 112, 117 (1959).

Section 1-104 of the Liquor Code, "Interpretation of Act," provides:

"(a) This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, *peace* and morals of

the people of the Commonwealth and to prohibit forever the open saloon, and *all of the provisions of this act shall be liberally construed for the accomplishment of this purpose*." (Emphasis added.)

As stated by our colleague, Judge Kenneth H. Koch, concerning Regulation 5.32(a) in Smart, Inc. v. Liquor Control Board, 70 D. & C. 2d 535, 538 (1974):

"It should be noted that the regulation does not seek to *prohibit* the playing of what counsel for appellant chooses to label 'sedate music'. The restriction purports to *limit* the sound of music, be it sedate or rock, or other entertainment, to be inside of licensed premises thus protecting neighbors, street pedestrians, and others from being subject to unwanted sounds—that which might be described as 'noise pollution.' . . . [A]t a minimum it is reasonable to require a licensee to keep the volume of music, as amplified through a loudspeaker, out of the earshot of pedestrians and residents in the area." (Emphasis in original.)

The Commonwealth Court in Hude, supra, held Regulation 5.32(a) "reasonably related to the accomplishment of a specific valid state interest: protecting persons outside liquor establishments from interference with a peaceable environment." 55 Pa. Commonwealth Ct. 4, 423 A. 2d at 17.

In view of the requirement that the Liquor Code be liberally construed to assure a peaceable environment for the public, we hold that the regulation is violated when music can be heard outside the premises, whether or not the music disturbed a member of the public (other than a liquor control board enforcement officer) at the time. The evil to be remedied is the *potential* for disturbance of the peace. We do not read the regulation, the statute,

nor the case law as requiring the board to produce testimony from members of the public, that they were actually disturbed.

For the same reasons we reject licensee's argument that the violation must occur in a residential, rather than a commercial, area. The apparent purpose of the regulation is to eliminate potential disturbance of members of the public when they are near a liquor establishment, whether in their homes, their businesses, in someone else's business, in a shopping center, or nearby.

The argument that certain minimal violations should be permitted was rejected by the Commonwealth Court in Hude, supra. In Hude licensee argued that a decibel scale measurement of sound intensity should be required, otherwise the regulation would be invalid for failing to utilize the "least drastic means" to accomplish its purpose. As stated by the court, "At best, this view assumes that a total prohibition of external noise is unreasonable, and that a decibel standard should be used to insure that only an excessive degree of noise is condemned. Although a decibel scale measurement may be desirable in terms of specificity, it is not essential as a matter of law." 55 Pa. Commonwealth Ct. at 5, 423 A. 2d at 17.

Licensee cites In re Ciro's Lounge, Inc., 24 Pa. Commonwealth Ct. 589, 358 A. 2d 141 (1976) to support his view that he may not be fined where there are only isolated incidents of noise, or where the noise is not continuous. In Ciro's the proprietor shot a boisterous patron while attempting to remove him, following a dispute. The board revoked the proprietor's liquor license. The Commonwealth Court reversed because the noise and disorderly conduct were isolated and not relatively continuous.

Because Ciro's is distinguishable from the case at

bar in several regards, licensee's reliance upon it is misplaced. First, the prosecution in Ciro's was based upon an allegation of noisy and disorderly conduct inside the premises. In the instant case the violation is for loudspeakers which could be heard outside the premises.

Second, the licensee in Ciro's was charged under a "catch-all" provision of Section 4-471 of the Liquor Code authorizing punishment "upon any other sufficient cause shown." In the instant case the punishment is authorized by another provision prohibiting "violation of . . . any regulations of the board," specifically regulation 5.32(a) restricting loudspeaker use.

Third, in Ciro's the Commonwealth Court reversed the board's revocation of appellant's license. In our case the board imposed only a fine.

Fourth, in Ciro's there was one isolated incident of relatively brief duration. In the case at bar there were two incidents lasting 40 minutes and 29 minutes, respectively.

Finally, in Ciro's patrons initiated the disturbance. In this case, the loud music was initiated by employees of licensee in each instance.

Licensee also cites Pennsylvania Liquor Control Board v. Adams Cafe, 66 Schuylkill 26 (1970) and In re Shorto, 14 D. & C. 3d 222 (1980) for the proposition that a citation should not be based upon a single incident. In Adams Cafe an altercation started when licensee's bartender refused to serve an intoxicated, boisterous patron. We find Adams Cafe distinguishable from the case at bar in the same particulars as Ciro's.

In Shorto, licensee was cited for permitting minors to frequent the establishment. That case held that to "frequent" means "to visit often . . . or more than one or two visits." Accordingly, because the

158

loudspeaker regulation does not contain a "frequency" requirement, Shorto does not apply.

Next, licensee argues that, even if he violated the loudspeaker regulation, he should not be punished because his violation is de minimis. He cites Section 312 of the Crimes Code concerning de minimis infractions, 18 Pa.C.S.A. §312, and In re Shorto, supra.

In Shorto, the Cambria County Court applied Section 312 of the Crimes Code to preclude further prosecution by the Liquor Control Board, because the court found the infraction to be de minimis. In Shorto, a young woman, aged 20 years, 9 months and 13 days, drank one sip of beer given her in the establishment by an adult patron, unbeknownst to licensee. As a result of the incident, the minor was prosecuted and fined for underaged drinking. Under the circumstances the Cambria County Court felt that further prosecution of the owner for serving a minor was unwarranted.

In our view the facts of the case before the bar do not meet the statutory definition of a de minimis infraction under the Crimes Code, and, therefore, we decline to dismiss the Liquor Control Board's prosecution on that basis. Accordingly, we are not required to decide whether we agree with the decision of the Cambria County Court to apply the de minimis provisions of the Crimes Code to a Liquor Code violation.

Finally, licensee argues that, even if his conviction were proper, his fine must be reduced, citing In re Center Road Tavern, Inc., 31 Pa. Commonwealth Ct. 502, 377 A. 2d 204 (1977). In Center Road Tavern, the board assessed a fine of $500 for sales of beverages to minors "on November 1, 1975 and on divers other occasions within the last year." Because the board presented no evidence at the de

novo hearing to sustain any violations on "divers other occasions," the lower court in that case reduced the fine to $250. The Commonwealth Court affirmed the lower court, stating:

"Since the finding of the court below, that only one violation of the Code by Licensee was established by the Board, differs significantly from the Board's finding that Licensee violated the Code 'on November 1, 1975, and on divers other occasions within the past year,' the court below was properly acting within its discretion in modifying the penalty imposed by the Board." 31 Pa. Commonwealth Ct. at 504, 377 A. 2d at 205 (1977).

Licensee was cited in the case at bar for violations "on or about July 30, August 1, 1980, and on divers other occasions within the past year." However, the board below found violations only on July 30 and August 1, and, therefore, did not base its fine on any violations on "divers other occasions." Because we also find violations on July 30 and August 1, we make no finding on the material issues different from the board, and, therefore, are powerless to reduce the fine: Latrobe Armed Service Association, supra; Patty's Den, supra; Washington Sporting Club, supra.

Accordingly, we affirm the order of the Pennsylvania Liquor Control Board.

ORDER

Now, November 18, 1981, for the reasons stated in the accompanying opinion,

It is ordered that the appeal of Vincent Luvera, trading as Naples Pizza, be dismissed, and the or-

der of the Pennsylvania Liquor Control Board dated March 27, 1981, is affirmed.