650 A.2d 854

PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR
CONTROL ENFORCEMENT, Appellant,

v.

HOSPITALITY INVESTMENTS OF PHILADELPHIA,
INC., Appellee.

Supreme Court of Pennsylvania.

Submitted Oct. 18, 1993.

Decided Nov. 3, 1994.

110

Stanley J. Wolowski, Pittsburgh, for Pa. St. Police.

Gary F. DiVito, Philadelphia, for Hosp. Invest.

Before NIX, C.J., and FLAHERTY, ZAPPALA, PAPADAKOS, CAPPY, CASTILLE, and MONTEMURO, JJ.

## OPINION OF THE COURT

PAPADAKOS, Justice.

This appeal arises from a finding by the Court of Common Pleas of Philadelphia County that Section 498 of the Pennsylvania Liquor Code, 47 P.S. § 4–498, is unconstitutional. This is an appeal as of right directly to this Court, as authorized by 42 Pa.C.S.A. § 722(7), since, under that section we have exclusive jurisdiction of appeal from final orders of courts of common pleas in cases where such a court has held any statute to be unconstitutional. For the reasons set forth below, we reverse.

Appellant, the Bureau of Liquor Control Enforcement ("Bureau"), is responsible for enforcing the Pennsylvania Liquor Code, 47 P.S. § 1–101, et seq. Appellee (hereinafter the "Licensee") is the holder of a restaurant liquor license issued by the Pennsylvania Liquor Control Board ("Board"). In late 1989, the Bureau issued a citation against the Licensee charg-

ing a violation of Section 498 of the Liquor Code. Section 498 prohibits a licensee from advertising in any manner whatsoever the price of any malt beverage, cordial, wine or distilled liquor offered for sale in this State. A hearing relative to the citation was held before an administrative law judge and the following fact was stipulated. A bureau enforcement officer read the Licensee's advertisement in the October 26, 1989, edition of the daily Pennsylvania paper. The advertisement stated, in part: "$1.00 Regular Drinks 9–12 midnight." The Licensee admitted that its ad violated Section 498. The only argument that the Licensee raised was that Section 498 was unconstitutional.

The administrative law judge who heard the case found that the Licensee had violated Section 498 and she imposed a fine of $250.00 for this violation. She also found that she had no jurisdiction to address the constitutional issue. The Pennsylvania Liquor Control Board affirmed. The Licensee appealed to the Court of Common Pleas of Philadelphia County and oral argument was held on July 23, 1991. At that argument, the Licensee contended that the Bureau failed to establish that the policy behind the price advertising prohibition of Section 498 outweighed its constitutional right to commercial free speech. The trial judge accepted this argument and, by order dated July 23, 1991, granted the Licensee's appeal and reversed the order of the Board. On June 26, 1992, the trial judge issued a one page memorandum opinion concluding that Section 498 violated the Pennsylvania Constitution. The trial judge otherwise noted that his reasoning appeared on the record.[1]

The Bureau appealed to the Commonwealth Court and the matter was subsequently transferred to this Court pursuant to our exclusive jurisdiction under 42 Pa.C.S.A. § 722(7), as noted above.

The Licensee herein argues that its right to commercial free speech as guaranteed under the First Amend-

---

1. A review of the record shows that the Judge's few remarks are inadequate and contain no reference to any section of the Pennsylvania Constitution.

ment to the United States Constitution, is set forth in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980); *Virginia Pharmacy Board v. Virginia Citizen Consumer Counsel, Inc.*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Pennsylvania State Board of Pharmacy v. Pastor*, 441 Pa. 186, 272 A.2d 487 (1971).[2] However, none of those cases involved the sale of alcohol or alcoholic beverages. The sale or consumption of alcohol or alcoholic beverages in this country is governed initially by the Twenty–First Amendment to the United States Constitution which repealed prohibition. Regulation of the sale and consumption of alcohol is left to the state under that amendment. A state has the power to ban the purchase and sale of alcoholic beverages within its borders. The manufacture, gift, purchase, sale, possession or transportation of alcoholic beverages may be prohibited. However, once having granted to its citizens the privilege of selling and buying alcoholic beverages, the state cannot impose restrictions which strangle the trade. Restrictions may be imposed so long as they bear a reasonable relation to the evil sought to be controlled.

■ In *Tahiti Bar, Inc. Liquor License Case*, 395 Pa. 355, 150 A.2d 112, *appeal dismissed*, 361 U.S. 85, 80 S.Ct. 159, 4 L.Ed.2d 116 (1959), this Court held that an individual has no constitutionally protected *right* to engage in the business of selling alcoholic beverages. Rather, the authority to sell alcoholic beverages is a *privilege* granted by the State. Accordingly, a state may impose conditions and limitations on that privilege. We held that regulation of the liquor business is required only to bear a *reasonable* relation to the evil sought to be controlled. Since an individual who accepts the privilege of holding a liquor license is deemed to consent to the conditions and restrictions attached to that license, the usual tests, still applicable in other situations and used to evaluate constitutional challenges, are not involved. See also,

**2.** The Pennsylvania Constitution's guarantee of free speech is involved in the *Pastor* decision.

*Replogle v. Commonwealth, Pa. Liquor Control Board,* 514 Pa. 209, 523 A.2d 327 (1987).

■ It is clear here that Section 498, which prohibits price advertising of alcoholic beverages, is reasonably related to permissible goals of the legislature in the area of alcohol control. The Bureau argues, and we have no reason to doubt their contention, that Section 498, along with other sections of the Liquor Code, is intended to restrain and discourage the consumption of alcoholic beverages. This is a legitimate legislative purpose. It is reasonable to accept that banning price advertising is *prima facie* consonant with such a purpose. By its very nature, price advertising (typically *discount* price advertising) is designed to encourage consumption by promoting and increasing the sale of alcoholic beverages. A string of witnesses or statistical studies are not needed to prove this point. In short, we find that Section 498 bears a reasonable relation to legitimate legislative goals in the area of alcohol control and since this is so, the incidental curtailment of the right of commercial free speech is justified where acquisition of a liquor license is a privilege and not a right. A careful balancing of competing interests as is usually done in free speech cases is not required.

Three United States Supreme Court cases in the area of liquor license control clinch the argument. In *California v. LaRue,* 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972); *New York State Liquor Authority v. Bellanca,* 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981); and *City of Newport, Ky. v. Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986), the United States Supreme Court was faced with a challenge to a local liquor licensing law or regulation prohibiting live sexual entertainment or nude dancing in establishments licensed to sell liquor. In each case, the court rejected the licensees' arguments based on the free speech guarantees of the First and Fourteenth Amendments and the court did not engage in the traditional First Amendment analysis. Rather, the relevant liquor regulation was held not to be irrational (*LaRue*); was held to be a valid attribute of the state's power to ban the sale of alcoholic beverages entirely

(*Bellanca*); or was held to be presumptively valid (*Iacobucci*).

The case instantly before this Court involves a restriction on commercial speech as implicated in the enforcement of the Liquor Code and we do not intend to deprecate the importance of the constitutionally protected right to commercial speech in appropriate cases. Although neither *LaRue, Bellanca* nor *Iacobucci* involved such a restriction, the applicability of those cases to the case *sub judice* is most compelling because commercial speech is generally accorded less protection than other forms of expression. *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York, supra.* It seems unnecessary to apply a rigorous First Amendment analysis where a liquor regulation is attacked on commercial speech grounds when such an analysis has not been utilized relative to speech which is usually accorded greater protection. The United States Supreme Court has held that "the Twenty-first Amendment shields restrictions on speech from full First Amendment review." *Iacobucci,* 479 U.S. at 97, 107 S.Ct. at 386.

In conclusion, upon carefully reviewing *LaRue, Bellanca* and *Iacobucci,* two points stand out. First, the Twenty–First Amendment gives a state broad authority and, hence, there is an "added presumption of validity" when the state regulates in the area of liquor sales. Second, the reasonable relationship test is relevant to determining constitutionality. Constitutionally protected speech may be restricted because the law in question is related to the regulation of liquor.

Accordingly, we find Section 498 to be a valid exercise of Pennsylvania's right to regulate the sale and consumption of alcohol. The order of the Court of Common Pleas of Philadelphia County is reversed.

FLAHERTY and CASTILLE, JJ., file a dissenting opinion.

MONTEMURO, J., is sitting by designation.

FLAHERTY, Justice, dissenting.

I dissent. The majority holds that a state has the power under the Twenty–First Amendment to the United States Constitution to regulate the sale and consumption of alcohol; that there is no constitutional right to engage in the business of selling alcoholic beverages; that the state may impose reasonable conditions and limitations on the sale of alcoholic beverages; and that "the usual tests" concerning the constitutional validity of these conditions and limitations are not involved because "an individual who accepts the privilege of holding a liquor license is deemed to consent to the conditions and restrictions attached to the license." Since discouraging consumption of alcoholic beverages is a legitimate legislative purpose, and since banning price advertising "bears a reasonable relation to legitimate legislative goals," any curtailment of free speech which results, the majority reasons, is "justified where acquisition of a liquor license is a privilege and not a right."

While it is true that there may be no federally protected right of commercial speech on the facts of this case under the First Amendment to the United States Constitution, it is equally certain under our decision in *Insurance Adjustment Bureau v. Insurance Commissioner* that there are rights under Article I, Section 7 of the Pennsylvania Constitution:

We hold, therefore, that the Pennsylvania Constitution, Article I, Section 7, will not allow the prior restraint or other restriction of commercial speech by *any* governmental agency where the legitimate, important interests of government may be accomplished practicably in another, less intrusive manner.

518 Pa. 210, 225, 542 A.2d 1317, 1324 (1988)[1] (Emphasis added.) This holding is relevant to a consideration of the majority's view that the statute at issue in this case is reason-

1. Article I, Section 7 provides, in pertinent part:
   The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty.

ably related to a legitimate governmental purpose. In Pennsylvania, the reasonableness of the relationship between the statute and the governmental purpose must be answered within the context of the protections the Pennsylvania Constitution provides to commercial speech. And those protections, in a word, are that any regulation restricting commercial speech must involve legitimate, important governmental interests and that there must be no less intrusive way practically to protect those interests.

Moreover, there is no presumption of validity of a liquor regulation or any governmental regulation which restricts commercial speech. In *Insurance Adjustment Bureau*, we stated:

> We note our agreement with the Bureau that in cases involving the constitutional challenge to a restriction on commercial speech which is not false or deceptive, "The party seeking to uphold a restriction of commercial speech carries the burden of justifying it."

*Id.* at 219, n. 5, 542 A.2d at 1321, n. 5. (Citations omitted.)

Thus, I would remand the case for a determination of whether the Commonwealth has met *its* burden of justifying its regulation of commercial speech by establishing that there is no less intrusive way in which its legitimate and important purpose practically can be achieved.

CASTILLE, Justice, dissenting.

I respectfully dissent. The majority opinion cites to *In re Tahiti Bar, Inc.*, 395 Pa. 355, 150 A.2d 112 (1959), to support its theory that since an individual who accepts the privilege of holding a liquor license is deemed to consent to the conditions and restrictions attached to that license, the usual tests, still applicable in other areas and used to evaluate constitutional challenges, are not involved. The majority opinion goes on to assert that the Twenty-first Amendment to the United States Constitution allows the Commonwealth to substantially regulate liquor advertisement in Pennsylvania without meaningful regard for the free speech interests of those engaged in the

business. The majority opinion asserts that because the U.S. Supreme Court in *Newport v. Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, 93 L.Ed.2d 334 (1986), *New York State Liquor Authority v. Bellanca*, 452 U.S. 714, 101 S.Ct. 2599, 69 L.Ed.2d 357 (1981) and *California v. La Rue*, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed.2d 342 (1972) failed to engage in a First Amendment analysis for challenges to local liquor licensing regulations prohibiting live sexual entertainment in establishments licensed to sell liquor, then no First Amendment analysis is required here for a regulation limiting pure commercial speech ("[i]t seems unnecessary to apply a rigorous First Amendment analysis where a liquor regulation is attacked on commercial speech grounds when such analysis has not been utilized relative to speech which is usually accorded greater protection (i.e., live, sexually-explicit entertainment)." Majority Opinion at 114). The majority opinion would have the Court uphold the challenged regulation merely because it is reasonably related to the regulation of liquor.

Restrictions on commercial speech, however, are generally much more rigorously scrutinized than the majority opinion seems willing to concede. Commercial speech, such as advertising, has been given substantial protection under the First Amendment to the U.S. Constitution and under Article 1, Section 7 of the Pennsylvania Constitution. *See, e.g., Virginia Pharmacy Board v. Virginia Consumer Council*, 425 U.S. 748, 96 S.Ct. 1817, 48 L.Ed.2d 346 (1976); *Insurance Adjustment Bureau v. Insurance Commissioner*, 518 Pa. 210, 542 A.2d 1317 (1988). A constitutional free speech analysis, then, is likewise required of us in the instant matter.

Prior to 1976, *Tahiti Bar, supra*, 395 Pa. 355, 150 A.2d 112, was in keeping with the traditional view that purely commercial advertising was not entitled to any First Amendment protection and could therefore be subjected to governmental regulation in the same way as any other type of business activity. *See Valentine v. Chrestensen*, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942) (the Constitution imposes no restraint on government with respect to commercial advertising). However, after the U.S. Supreme Court expressly extended rigorous First Amendment protection to commercial

speech in its 1976 *Virginia Pharmacy* decision, *supra,* 425 U.S. at 748, 96 S.Ct. 1817, the proposition asserted by this Court's 1959 *Tahiti Bar* decision that regulation of the liquor business is required only to bear a reasonable relation to the evil sought to be controlled is therefore constitutionally suspect in the instant context. To the extent *Tahiti Bar* is not in accordance with U.S. Supreme Court caselaw, it should be overruled. In short, a careful reading of that federal caselaw makes clear that there is little basis to follow the majority opinion's abandonment of the constitutional analysis in which this Court would otherwise engage but for the implication of the Twenty-first Amendment.

First, the Supreme Court has repeatedly affirmed the principle that neither the text nor the history of the Twenty-first Amendment suggests that it in any way limits the exercise of established individual constitutional rights where the sale or use of liquor is concerned. *Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976) (equal protection rights not limited by the implication of the Twenty-first Amendment); *Wisconsin v. Constantineau,* 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971) (the Twenty-first Amendment does not permit a state to regulate alcohol consumption at the expense of procedural due process). Indeed, the Twenty-first Amendment was intended simply to insulate state regulation of liquor from potential federal Commerce Clause objections: "[o]nce passing beyond consideration of the Commerce Clause the relevance of the Twenty-first Amendment to other constitutional provisions becomes increasingly doubtful." *Craig* 429 U.S. at 205–06, 97 S.Ct. at 461. Further, in the cases cited by the majority opinion (*La Rue,* 409 U.S. 109, 93 S.Ct. 390, *Iacobucci,* 479 U.S. 92, 107 S.Ct. 383, and *Bellanca, supra,* 452 U.S. 714, 101 S.Ct. 2599), the Twenty-first Amendment served only to buttress the states' standing to regulate live, explicitly sexual entertainment at establishments licensed to dispense liquor; the Twenty-first Amendment did not function in those cases to enhance the states' ability to curtail expressly protected constitutional rights. *Id.* at 207 (distinguishing *La Rue, supra,* 409 U.S. 109, 93 S.Ct. 390).[1]

---

1. The other cases upon which the majority relies (*Iacobucci,* 479 U.S. 92, 107 S.Ct. 383 (1986) and *Bellanca,* 452 U.S. 714, 101 S.Ct. 2599 (1981), *supra* ), in no way undermine this notion that the Twenty-first

Second, the U.S. Supreme Court has never expressly evaluated the impact of the Twenty-first Amendment on the constitutional validity of state-imposed limitations on liquor advertising. Therefore, the majority's analysis in the instant case is supported only by very rough analogy to *La Rue*, 409 U.S. 109, 93 S.Ct. 390, *Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, and *Bellanca, supra*, 452 U.S. 714, 101 S.Ct. 2599. Moreover, the majority opinion misinterprets the application of the Twenty-first Amendment in those cases. *La Rue*, 409 U.S. 109, 93 S.Ct. 390, *Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, and *Bellanca, supra*, 452 U.S. 714, 101 S.Ct. 2599, merely stand for the proposition that the states have sufficient police power under the Twenty-first Amendment to override the relatively weak First Amendment interests of those providing sexually provocative entertainment in a facility operating with a liquor license. *See Bellanca*, 452 U.S. at 718, 101 S.Ct. at 2601–02 (whatever artistic or communicative value may attach to topless dancing is overcome by the state's exercise of its broad power arising under the Twenty-first Amendment). *See also Hude v. Commonwealth*, 55 Pa.Commw. 1, 423 A.2d 15 (1980) (liquor regulation preventing the use of a loudspeaker whereby the sound of the music emanating therefrom can be heard on the outside of liquor-licensed premises did not operate to breach freedom of expression in that the enjoyment of loud music in a tavern is not a fundamental right of free expression).[2]

In none of those federal cases did the Supreme Court rely exclusively on the state's authority under the Twenty-first

Amendment is not an independent repository of state power to abridge established First Amendment protections. Like *La Rue*, the U.S. Supreme Court cases *Iacobucci* and *Bellanca* merely involved state regulation of live sexual entertainment taking place in liquor establishments. Therefore, the *Craig* Court's assertion that *La Rue* did nothing to enhance the states' power to curtail explicitly protected constitutional rights pursuant to the Twenty-first Amendment is still valid today. Moreover, although this Court expressly upheld the regulation of lewd, immoral or improper entertainment on licensed premises in *Tahiti Bar, supra*, 395 Pa. 355, 150 A.2d 112, that decision is not strictly in accordance with the U.S. Supreme Court's commercial speech caselaw. *See* discussion *supra*.

**2.** *Hude* is significant because it highlights the notion that in liquor control cases, Pennsylvania courts must first determine the inherent value of the speech at issue and then evaluate whether the state's authority to regulate liquor commerce is sufficient to override that particular class of speech.

Amendment to uphold the challenged regulation's. Notwithstanding this fact, however, the majority opinion in the instant matter asserts the validity of the challenged regulation precisely because it is reasonably related to the Commonwealth's authority to regulate liquor commerce pursuant to the Twenty-first Amendment. Furthermore, the regulations in *La Rue*, 409 U.S. 109, 93 S.Ct. 390, *Iacobucci*, 479 U.S. 92, 107 S.Ct. 383, and *Bellanca*, *supra*, 452 U.S. 714, 101 S.Ct. 2599, functioned primarily only as conditions upon the sale of alcohol that only incidentally burdened expression. The challenged regulation in the instant case, however, directly targets otherwise constitutionally-protected expression itself. The regulations in the cases cited by the majority sought to burden conduct containing only a minimal communicative element: i.e., live, sexually explicit entertainment. *See Craig*, 429 U.S. at 207, 97 S.Ct. at 462 (distinguishing *La Rue* as a case where conduct consisted "more of gross sexuality than of communication"). In the instant case, however, the challenged regulation seeks to suppress constitutionally protected commercial information, or "pure" speech.[3]

Accordingly, the regulation in the instant case should be analyzed no differently than are other governmental burdens on commercial speech. *See Posadas de Puerto Rico Associates v. Tourism Company of Puerto Rico*, 478 U.S. 328, 106 S.Ct. 2968, 92 L.Ed.2d 266 (1986) (applying customary commercial speech standards to casino gambling advertising.) In *Insurance Adjustment Bureau*, *supra*, this Court analyzed a commercial speech constitutional challenge to an amendment to the public adjuster and public adjuster solicitor law prohibiting solicitation of business by public adjusters or public adjuster solicitors within 24 hours of a disaster or fire. The Court developed a method of analysis by which it first scrutinized the challenged regulations pursuant to the minimum standards of analysis and substantive protection as required

3. The majority opinion's assertion that live, sexually-explicit entertainment is generally accorded greater constitutional protection than commercial speech profoundly misinterprets federal caselaw. *See* Brian S. Steffey, *Recent Development: Tension Between the First and Twenty-first Amendments in State Regulation of Alcohol Advertising*, 37 Vand.L.Rev. 1421, 1448 (1984).

by the U.S. Supreme Court and the federal constitution. *Id.* 518 Pa. at 215, 542 A.2d at 1319. The Court then examined whether the resolution of the particular issue in question is more appropriately treated pursuant to the Pennsylvania constitution or the United States constitution. *Id.*[4]

Proceeding with the *Insurance Adjustment Bureau* Court's method of analysis, the First Amendment requires that the party seeking to uphold a restriction on commercial speech carries the burden of justifying it. *Bolger v. Youngs Drug Products Corp.*, 463 U.S. 60, 70, n. 20, 103 S.Ct. 2875, 2882 n. 20, 77 L.Ed.2d 469 (1983). The First Amendment also requires courts to subject state limitations on commercial speech to an intermediate standard of review and uphold those limitations only if the state carries its burden of proving that (1) the challenged regulation directly advances (2) a substantial governmental interest (3) in a way that is no more restrictive than necessary to achieve that objective. *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980). Conceding the second prong of the test that the Commonwealth has a substantial interest in promoting the public health, safety and welfare, the Commonwealth in the instant case must first have shown that the advertising limitation at issue directly advances that interest. To succeed, the Commonwealth must have demonstrated that its ban on advertising the price of any malt beverage, cordial, wine or distilled liquor directly reduces the consumption of such liquor and, thereby, the evils associated with such consumption. To satisfy the third prong of the *Central Hudson* test, the Commonwealth must have shown that the regulation is written or applied no more restrictively than necessary to achieve its asserted interest.

4. The Court determined that Article I, Section 7 of the Pennsylvania constitution does not allow the prior restraint or other restriction of commercial speech by any governmental agency where the legitimate, important interests of government may be accomplished practicably in another, less intrusive manner. *Id.* 518 Pa. at 225, 542 A.2d at 1324. The Court applied that standard to strike down the prohibition of solicitation of business by public adjusters or public adjuster solicitors within 24 hours of a disaster or fire as violative of Pennsylvania constitutional free speech protections. *Id.*

In the instant case, however, a review of the record shows that the Commonwealth merely made the bald assertion that a ban on advertising liquor prices reduces the consumption of such liquor; it offered no empirical evidence or any other evidence to buttress its argument. As such, the Commonwealth failed to carry its burden on the first prong of the *Central Hudson* test. On the other hand, the licensee challenging the regulation offered evidence to the contrary, showing that there is no direct link between liquor advertising bans and reduced liquor consumption. Moreover, the Commonwealth failed to argue, much less prove, that the regulation is written or applied no more restrictively than necessary to achieve its asserted interest. As such, the Commonwealth failed to carry its burden on the third prong of the *Central Hudson* test as well.

In short, the Commonwealth failed to shoulder its burden regarding even the minimum standards of analysis and substantive protection as required by the U.S. Supreme Court and the federal constitution. Accordingly, at a minimum, this case should be remanded back to the trial court to allow the Commonwealth to develop the record, if it can, with evidence that (1) a ban on advertising liquor prices directly reduces the consumption of such liquor and (2) the regulation is written or applied no more restrictively than necessary to achieve its asserted interest.

Moreover, the litigants should utilize the analytical tool defined by this Court in *Commonwealth v. Edmunds,* 526 Pa. 374, 586 A.2d 887 (1991) in order to allow the trial court to thoroughly determine whether the resolution of the particular issue in question is more appropriately treated pursuant to the Pennsylvania constitution or the United States constitution. Accordingly, the litigants should brief and analyze (1) the text of Article I, Section 7 of Pennsylvania constitution; (2) the history of that provision; (3) relevant caselaw from Pennsylvania and from other jurisdictions regarding commercial speech and state regulation of liquor advertising; (4) policy considerations, including unique issues of state and local concern; and (5) the impact on modern Pennsylvania jurisprudence. *Id.* at

390, 586 A.2d at 895. If indeed the Pennsylvania constitution should protect the speech at issue in the instant matter more stringently than does the federal constitution, the consideration of that proposition should be thoroughly analyzed.

The majority opinion simply goes too far in sustaining the challenged regulation without an analysis of the free speech protections afforded the licensee under the First Amendment of the federal constitution or under Article I, Section 7 of the Pennsylvania constitution. Commercial free speech warrants more protection than the majority wishes to confer.