584 A.2d 1094

**COMMONWEALTH of Pennsylvania, PENNSYLVANIA LIQUOR CONTROL BOARD, Appellant,**

**v.**

**CIC INVESTORS NO. 870, LTD., Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 10, 1990.

Decided Dec. 28, 1990.

Eileen S. Maunus, Asst. Counsel, with her, Paul T. Sosnowski, Asst. Counsel, Harrisburg, for appellant.

William J. Brennan, with him, N. Curtis Ward, Butera, Beausang, Mower & Cohen, King of Prussia, for appellee.

Before McGINLEY and KELLEY, JJ., and CRUMLISH, Jr., Senior Judge.

## OPINION

CRUMLISH, Jr., Senior Judge.

Before us are the consolidated appeals of the Pennsylvania Liquor Control Board (Board) from two Philadelphia County Court of Common Pleas orders which reversed the Board's imposition of a five hundred dollar fine and a five-day suspension on CIC Investors No. 870, Ltd. (Investors). We reverse the common pleas court.

### No. 1446 C.D. 1989

 According to the testimony adduced at the *de novo* hearing before the common pleas court, a Liquor Control Board officer witnessed a bikini contest at Flanigan's, an establishment owned by Investors, in which prizes were awarded to the winning patrons. The officer testified that she witnessed the first and third place finishers receive cash and gift certificates, and the runner-up receive a gift certificate and a bottle of champagne which she consumed immediately. Another officer witnessed a similar contest on a separate occasion.

The Board imposed the fine on Investors for giving liquor as a prize in a contest, in violation of Section 493 of the Liquor Code, Act of April 12, 1951, P.L. 90, *as amended*, 47 P.S. § 4–493(24), and for holding the contest without Board approval. 40 Pa.Code § 5.32(g).

Investors appealed to the common pleas court, which vacated the Board's action, upon concluding that the activities at Flanigan's did not violate the Liquor Code since "it [was] not [that] type of activity that the cited code section was intended to prevent." [1]

Section 4–493(24) of the Liquor Code, states in pertinent part:

it shall be unlawful ... for any licensee ... to offer or give to trade or consumer buyers any prize, premium, gift or other inducement to purchase liquor or malt or brewed beverages except advertising novelties of nominal value which the board shall define.

47 P.S. § 4–493(24).

The Board now appeals, contending that there was sufficient competent evidence before the trial court to sustain the Board's findings that Investors permitted a contest without Board approval and gave liquor as a prize.

Our scope of review in a liquor license case, where a *de novo* hearing has been held, is limited to a determination of whether the Board's order is supported by sufficient evidence and whether the trial court abused its discretion or committed an error of law. *Adair v. Pennsylvania Liquor Control Board*, 519 Pa. 103, 546 A.2d 19 (1988).

We agree with the assessment of the common pleas court that the activity at Flanigan's was not the type proscribed in Section 4–493(24) of the Liquor Code. However, our inquiry does not end here. Investors' contends that it did not conduct a contest or tournament, and therefore, did not violate Section 5.32(g) of the Pennsylvania Code. 40 Pa. Code § 5.32(g). The Board argues that the "contests" were announced, conducted by Investors' doorman, and entailed the award of prizes to the top contestants. Section 5.32(g) provides in pertinent part:

*No* hotel, restaurant, or eating place *licensee shall hold or permit to be held,* on the licensed premises or on

---

1. *Pennsylvania Liquor Control Board v. CIC Investors,* (Miscellaneous No. 8801–3166, filed Nov. 13, 1989), slip op. at 3.

the premises contiguous and adjacent thereto, any tournament or contest; nor directly or indirectly advertise, offer, award or permit the award, on the licensed premises of trophies, prizes, or premiums, for any purpose except as follows: (1) [t]he licensees, by special permit issued by the Board on application filed and fees paid . . .
40 Pa.Code § 5.32(g).

In its opinion, the trial court placed "great importance in the fact that these *contests'* were not held on a regular basis, were not advertised in any way preceding the event itself and the quantity and type of *prizes awarded* varied."[2] (Emphasis added). The trial court, as evidenced by its opinion, in essence found that there *were* contests held on Investors' premises and prizes *were* awarded without a special permit. The evidence and the findings of the trial court are sufficient to support the Board's original citation. We hold that the activity Investors permitted violated Section 5.32(g) of the Pennsylvania Code.

Investors argue alternatively that Flanigan's is not a hotel, restaurant or eating place licensee, and therefore not subject to Section 5.32(g). In its appeal to the common pleas court, however, Investors represented that it was a "Pennsylvania limited partnership engaged in the *restaurant business* and holds *restaurant liquor license* No. R–AP–563 issued by the Pennsylvania Liquor Control Board." (Emphasis added). Having admitted it held a restaurant liquor license and engaged in the restaurant business, Investors cannot now argue that it is not a restaurant licensee to which Section 5.32(g) does not apply.

Accordingly, we will reverse the trial court and reinstate the Board's fine.

### No. 1447 C.D. 1989

█ The pertinent facts in this appeal are not in dispute. Two Liquor Control Board officers testified that they witnessed contact between an entertainer at Flanigan's and a

2. *Id.*

patron. The officers described the performance of an unknown male, as he stripped down to a G-string before an unknown female, apparently celebrating a bachelorette party. The officers then testified that the entertainer sat on the woman's lap, making explicit movements while the woman placed her hands on each side of his bare buttocks. The entertainer kissed the woman on the lips, gave her a bottle of champagne and then departed.

The Board issued a citation charging that Investors "by its servants, agents or employes permitted lewd, immoral or improper entertainment on the licensed premises, on June 6, 1987" ... and that Investors "permitted entertainers to contact and/or associate with patrons on the licensed premises, on June 6, 1987...."

Following a hearing, the Board made findings of fact substantiating these charges and, upon consideration of these findings as well as the record of prior citations, suspended Investors' license for a period of five (5) days.

Investors appealed this decision to the common pleas court, contending that it did not permit the dancer's performance and that the activities viewed by the officers did not, as a matter of law, amount to lewd entertainment. The common pleas court, after a *de novo* hearing on this citation, reversed Investors' license suspension.

The Board now appeals, contending that the trial court committed an error of law in reversing its decision when there were sufficient facts to support the finding that Investors permitted lewd, immoral or improper entertainment, and permitted entertainers to contact patrons. We agree.

Section 493(10) of the Liquor Code, provides in part: It shall be unlawful ... (10) for any licensee, his agents or employes ... to permit in any licensed premises any lewd, immoral or improper entertainment ...

47 P.S. § 4–493(10).

We first address the Board's contention that Investors permitted the dancer's performance. The testimony of the

two Board officers, who entered Investors' establishment on June 6, 1987, supports the finding that Investors at the very least allowed the described entertainment on the premises. Investors offered no testimony to demonstrate that it did not authorize the show, attempt to stop the show, or that the dancer performed without its approval. It is evident, therefore, that the stripper was permitted, by employees of the licensed establishment, to perform his act.

We now address Investors' contention that the activities viewed by the officers do not, as matter of law, constitute lewd entertainment. The evidence of record clearly establishes conduct beyond that which was envisioned by our Supreme Court in *Tahiti Bar, Inc. Liquor License Case*, 395 Pa. 355, 150 A.2d 112 (1959), when it decreed that female strippers performing "bumps and grinds" on stage constitutes lewd entertainment. In determining whether the entertainment in *Tahiti Bar* was lewd, immoral or improper, the Supreme Court held that the entertainment "was a predominant appeal to prurient interests." *Id.*, 395 Pa. at 367, 150 A.2d at 119. Given the application of the testimony to our Supreme Court's definition of lewd entertainment, we hold this to meet the test enunciated in *Tahiti Bar.*[3]

The Board also contends that whether a particular activity constitutes lewd, immoral or improper conduct, is a question of law, not of fact. *Pennsylvania Liquor Control Board v. J.P.W.G., Inc.*, 88 Pa.Commonwealth Ct. 385, 489 A.2d 992 (1985). In *J.P.W.G.*, the licensee argued that the trial judge correctly observed that a go-go dance by a topless performer *in this day and age* cannot constitute lewd, immoral or improper conduct. This Court in *J.P.W.G.* concluded that "while moral standards may have changed, the law relative to the Board's control over licensees has not." *Id.*, 88 Pa.Commonwealth Ct. at 390, 489 A.2d at 994. Our Supreme Court in *Tahiti Bar* said that "[t]here is

---

**3.** The Supreme Court in *dicta* noted it did not believe "that *only* a female may be guilty of the conduct prohibited by this regulation nor that the Board is arbitrary in its assumption that a male entertainer might be guilty of the same conduct." See *Tahiti Bar, Inc.*, 395 Pa. at 371–372, 150 A.2d at 121.

perhaps no other area of permissible action within which the exercise of the police power of a state is more plenary than the regulation and control of the use and sale of alcoholic beverages." *Tahiti Bar*, 395 Pa. at 360, 150 A.2d at 115. Here, the Board's finding that the male stripper's conduct constituted lewd, immoral or improper behavior should not have been reversed. Accordingly we reverse the trial court.

We finally consider the Board's contention that the trial court committed an error of law in reversing the findings of the Board when there was sufficient evidence to support the finding that Investors permitted the male stripper to contact a patron. Investors argues that the record does not support the finding that it violated Section 5.32(d) of the Pennsylvania Code, which states in part:

"No licensee may permit a person engaged directly *or indirectly* as an entertainer in the licensed establishment or a room, or a place connected therewith, to *contact* or associate with the patrons in the establishment, room, or place." (Emphasis added).

40 Pa.Code § 5.32(d).

Investors does not dispute that the dancer sat on a female patron's lap and then kissed her on the lips. It is beyond argument that this constitutes contact.

Investors avers, however, that it took no action in "permitting" the unknown male's performance. As discussed earlier, by allowing such a performance, Investors must be said to have permitted the performance and the contact, since it took no action to stop, prevent or disallow the act.

The unknown male was indisputably engaged as an entertainer, albeit by the acquiescence of Flanigan's, and he did in fact contact a patron, in violation of the Pennsylvania Code. Accordingly, we hold that the trial court erred in its conclusion that there was neither a violation of the Liquor Code nor the Pennsylvania Code. The Board's five-day suspension of Investors' license is reinstated.

## ORDER

The orders of the Philadelphia County Common Pleas Court dated November 6, 1985, Miscellaneous Nos. 8801–3165 and 8801–3166, are reversed and the LCB's five-hundred dollar fine and five-day suspension are reinstated.