**In re Appeals of Chinese Gospel Church**

*Thomas R. Betz,* for Chinese Gospel Church.
*William M. Morrin* and *Edward A. Taraskas,* for Eurs Corp., 14,000 Siblings Inc., Delaware Tavern Inc. and Teasers Inc.
*Donald M. Maser,* for Carney's City Line Inc.
*Stanley Krakower,* for Somerton Civic Association.
*Cheryl L. Gaston,* for Zoning Board of Adjustment.

AVELLINO, *J.,* July 15, 1994—These zoning appeals implicate the same question: Is a municipality entitled to regulate the entertainment that liquor licensees pro-

vide for their patrons? The entitlement question has surfaced, so to speak, because the Department of Licenses and Inspections recently decided that section 14-1605 of the Philadelphia Zoning Code applies to restaurants that are licensed by the state to serve alcoholic beverages.

Enacted in 1979, section 1605 basically bans cabarets from desirable zones, and permits them in other zones on a prior approval basis. A "cabaret" is defined, in pertinent part, as "[a] *restaurant ... which features [female entertainers] exhibiting [breasts and buttocks which are less than] completely and opaquely covered.*" (emphasis added) ("fully clothed standard"). According to L & I, a restaurant-licensee becomes a cabaret owner the moment the licensee begins to feature entertainers who are scantily-clad.[1]

After announcing the new policy, L & I embarked upon a series of highly publicized raids. Rather than risk having their establishments closed for improper zoning,[2] the licensees sub judice sought relief from the Zoning Board of Adjustment. Only two were successful, and their cases are now before the court via appeals brought by others.[3] The remaining licensees are here appealing from the ZBA's refusal to grant a permit or variance.

---

1. See *e.g.,* Letter of October 4, 1993, from Commissioner Bennett Levin to various restaurant-licensees: "[T]he Department of Licenses and Inspections has concluded that the bare skin exposed by your employees providing artistic entertainment does not conform to the provisions of the Zoning Code of Philadelphia, specifically, section 1605."

2. See *e.g.,* Philadelphia Zoning Code §14-1704(2) (purporting to empower L & I to issue "cease operation" orders on an ex parte basis).

3. See no. 9311-3017 *(Chinese Gospel Church)* and no. 9402-0162 *(Somerton Civic Association).*

Because section 1605 is invalid as applied to restaurant-licensees, all of the ZBA rulings are *ultra vires.* Briefly, First Amendment concerns aside, a municipality may not regulate the entertainment offered by licensees because the Pennsylvania Supreme Court has declared the liquor industry off limits, so to speak, to municipal regulation (or taxation). See *e.g., Commonwealth v. Wilsbach Distributors Inc.* 513 Pa. 215, 224, 519 A.2d 397, 400-402 (1986) ("[T]he legislature has adopted a scheme of regulation so pervasive over the entire alcoholic beverage industry that it has 'pre-empted the field' to the exclusion of all interference from subordinate legislative bodies."); *Council of Middletown Township v. Benham,* 514 Pa. 176, 182, 523 A.2d 311, 313-314 (1987) ("We have found an intent to totally pre-empt local regulation in only three areas: *alcoholic beverages,* banking and anthracite strip mining.") (emphasis added) ("field pre-emption").[4]

The proponents of section 1605 maintain that the doctrine of field pre-emption has no bearing on the fully-clothed standard because the latter is "liquor neutral." They argue, in substance, that entertainment is an *incidental* feature of the sale of alcoholic beverages. As such, it should be subject to local control like the plumbing, wiring, and so on, that are usually found on liquor-licensed premises.

This argument assumes too much. First, if the state chooses to pre-empt a particular field, all of the activities within that field—including the so-called "incidental"

---

4. A fourth industry, harness racing, was said to be totally pre-empted by the Commonwealth Court in the case of *Liberty Bell Racing Association v. City of Philadelphia, Tax Review Board,* 86 Pa. Commw. 83, 483 A.2d 1063 (1984), *appeal denied* 514 Pa. 626, 522 A.2d 51 (1987).

ones—are off limits to municipal regulation.[5] Second, "incidental" or not, the state has, in fact, chosen to regulate the entertainment that licensees provide for their patrons. Professional dancers, for example, are prohibited unless the licensee first obtains an amusement permit.[6] Notwithstanding such a permit, dancers may not be *viewed*,[7] nor may the sound of music be *heard* from outside of the licensed premises.[8] Outdoor advertising is prohibited, except for a modest sign that contains the name of the entertainer (and not "descriptive matter, paintings or photographs").[9] Additionally, dancers may not "contact or associate" with patrons,[10] and must be at least 18 years old.[11]

Significantly, the state also prohibits "lewd, immoral or improper entertainment." See 47 Pa.C.S. §4-493(10) ("lewdness standard"). Judging from the cases, the lewdness standard subsumes the putative fully-clothed standard.[12] For example, both standards prohibit the ex-

---

5. See *e.g., City of Pittsburgh v. Allegheny Valley Bank of Pittsburgh,* 488 Pa. 544, 552 n.10, 412 A.2d 1366, 1370 n.10 (1980) (refusing to distinguish between traditional and non-traditional banking activities in order to allow municipal regulation of the latter).

6. Speaking broadly, amusement permits are issued on an annual basis, and are subject to revocation or non-renewal on discretionary grounds. See 40 Pa. Code §5.31 (governing the issuance of permits) and compare *id.* at §5.33 (governing suspension or revocation).

7. *Id.* at §5.32(b).

8. *Id.* at §5.32(a).

9. *Id.* at §5.32(c).

10. *Id.* at §5.32(d).

11. *Id.* at §5.32(f).

12. Indeed, the state recently revoked the amusement permits of the Eurs Corporation, no. 9402-0043, and 14,000 Siblings, Inc., no. 9403-0032, because they were convicted of violating the lewdness standard in administrative proceedings.

hibition of naked breasts,[13] but the former also bans other forms of "lewdness," including "improper" behavior by entertainers who are *fully clothed.*[14]

The state allows a municipality to be alcohol-free[15] or to ban *all* forms of entertainment from liquor-licensed premises.[16] These options aside, a city that accepts restaurant-licensees does so on a *cum onere* basis. See *e.g., Hilovsky Liquor License Case,* 379 Pa. 118, 122, 108 A.2d 705, 707 (1954) ("While a local ordinance barring restaurants entirely from any given district might be permissible, if allowed within the zone they must be received there, so to speak, *cum onere,* that is to

---

13. See *e.g., Commonwealth, Pa. Liquor Control Board v. J.P.W.G. Inc.,* 88 Pa. Commw. 385, 489 A.2d 992 (1985) (topless dancing violates the lewdness standard); *BJJ Enterprises Inc. v. Commonwealth, Pa. Liquor Control Board,* 85 Pa. Commw. 372, 481 A.2d 1253 (1984) (same). See also, *In re Scarcia Liquor License,* 32 Lehigh L.J. 599, 600 (1968) ("go-go" dancer wearing pants and "pasties" violates the lewdness standard).

14. See *e.g., Commonwealth, Pa. Liquor Control Board v. S & B Restaurants Inc.,* 112 Pa. Commw. 382, 389, 535 A.2d 709, 712-713 (1988) (kissing patrons in exchange for money); *In re Diana Appeal,* 31 Pa. Commw. 363, 365, 375 A.2d 1386, 1387 (1977) (suggestive contact with patrons); *Commonwealth, Pa. Liquor Control Board v. CIC Investors No. 870 Ltd.,* 137 Pa. Commw. 48, 53, 584 A.2d 1094, 1096-1097 (1990) (male erotic dancing); *Commonwealth, Pa. Liquor Control Board v. Tris-Dad Inc.,* 68 Pa. Commw. 176, 448 A.2d 690 (1982) (female erotic dancing). See also, *Harman v. Commonwealth, Pa. Liquor Control Board,* 117 Pa. Commw. 326, 543 A.2d 616 (1988) (R-rated movies on cable T.V.).

15. See *e.g., Replogle v. Commonwealth, Pa. Liquor Control Board,* 514 Pa. 209, 523 A.2d 327 (1987).

16. See 47 Pa.C.S. §4-493(10) ("No [amusement] permits shall be issued in any municipality which by ordinance prohibits amusements in licensed premises."). See also, 40 Pa. Code §5.35(b) (allowing municipalities to regulate the hours for amusements in licensed establishments).

say, with the rights, powers and license privileges granted to them by the Commonwealth."). See also, *Tahiti Bar Inc. Liquor License Case,* 395 Pa. 355, 369, 150 A.2d 112, 120 (1959) ("[I]f the state does permit entertainment, the state may prescribe the type and character of such entertainment as well as the conduct of the entertainers while on the licensed premises....").

True, a bar/restaurant, like any other business, is subject to appropriate zoning controls.[17] Section 1605, however, is hardly such a measure. As interpreted by L & I, it allows licensees to remain at their present locations if, *but only if,* their entertainers are fully clothed. As such, it is yet another ill-fated attempt by a municipality to regulate the "details" of a pre-empted industry.[18]

Appropriate orders follow and will be entered in due course.

## ORDER

And now July 15, 1994, the decision of the ZBA dated October 28, 1993, is rescinded for the reasons set forth in the accompanying memorandum.

---

17. See *e.g., Philm Corp. v. Washington Township,* 162 Pa. Commw. 126, 638 A.2d 388 (1994) (implicating a tavern that became entangled in the zoning doctrine that governs the expansion of non-conforming uses).

18. See *e.g., Sawdey Liquor License Case,* 369 Pa. 19, 25-26, 85 A.2d 28, 31-32 (1951) ("Conceding that a zoning ordinance may properly exclude hotels and taverns, like any other business, entirely from a residential area ... an entirely different question is presented when it is attempted to regulate the details of a hotel business which it permits in the zone where state legislation has filled the entire field of liquor regulation. We think that such regulation is improper.... An ordinance, for example, if it permitted a butcher shop to be located in an area but prohibited its sale of pork, or a drugstore but prohibited its sale of candy, or a grocery store but prohibited its sale of bread, would surely be regarded as unreasonable legislation....").