

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-15-2006

# Conchatta Inc v. Miller

Precedential or Non-Precedential: Precedential

Docket No. 05-1803

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Conchatta Inc v. Miller" (2006). *2006 Decisions.* Paper 523.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/523

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

———

No. 05-1803

———

CONCHATTA INC.,
t/d/b/a CLUB RISQUE ON THE DELAWARE;
GAIL BAKER; SABRINA BARRAR

v.

*COL. JEFFREY B. MILLER, IN HIS
OFFICIAL CAPACITY AS
COMMISSIONER, PENNSYLVANIA STATE POLICE

Conchatta, Inc.; Gail Baker;
Sabrina Barrar,

Appellants

* (Amended pursuant to F.R.A.P. 43(c))

———

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 01-cv-01207)
District Court Judge: Honorable John P. Fullam

———

Argued April 25, 2006

Before: FUENTES, STAPLETON and ALARCÓN,[1]
Circuit Judges.

(Filed: August 15, 2006)

J. Michael Murray (ARGUED)
Steven D. Shafron
Raymond Vasvari
Berkman Gordon Murray & DeVan
55 Public Square, Suite 2121
Cleveland, OH 44113

ATTORNEYS FOR APPELLANTS

John O.J. Shellenberger (ARGUED)
Chief Deputy Attorney General
Calvin R. Koons
Senior Deputy Attorney General
John G. Knorr, III
Chief Deputy Attorney General
Chief, Appellate Litigation Section
Thomas W. Corbett, Jr.
Attorney General of Pennsylvania
Office of the Attorney General of Pennsylvania
21 South 12th Street
Philadelphia, PA 19107

ATTORNEYS FOR APPELLEE

_____

OPINION OF THE COURT

_____

_____

[1] The Honorable Arthur L. Alarcón, Senior Judge, United States Court of Appeals for the Ninth Circuit, sitting by designation.

FUENTES, Circuit Judge.

The operator of a club in Philadelphia that features semi-nude dancing, as well as two of its dancers, challenge a Pennsylvania Liquor Code statute and regulation that prohibit "lewd" entertainment at any licensed establishment. Plaintiffs argue that the statute and regulation are unconstitutional both on their face and as applied to plaintiffs. We conclude that the statute and regulation are facially invalid because they are substantially overbroad, punishing a significant amount of protected speech in relation to their legitimate scope.

## I. BACKGROUND

Plaintiff Conchatta, Inc. operates Club Risque, a Philadelphia bar where erotic "striptease" performances are shown, and plaintiffs Gail Baker and Sabrina Barrar are dancers who have performed at Club Risque. During the performances, the dancers take off their clothes, leaving only G-strings, liquid latex covering their nipples, and high-heeled shoes. Club Risque prohibits physical contact between the dancers and patrons.

In March 2001, plaintiffs (hereinafter "Conchatta") filed suit in the United States District Court for the Eastern District of Pennsylvania against the Commissioner of the Pennsylvania State Police (hereinafter "the Commissioner"),[1] seeking preliminary and permanent injunctive and declaratory relief as to the enforcement of 47 Pa. Cons. Stat. Ann. § 4-493(10) (2005) (hereinafter "the Statute"), which provides that it shall be unlawful:

---

[1] The Commissioner is an appropriate defendant here because enforcement of the relevant statutory provisions is entrusted to the Bureau of Liquor Control Enforcement, which is a division of the Pennsylvania State Police. See 47 Pa. Cons. Stat. Ann. § 2-211 (2005). Defendant Col. Jeffrey B. Miller has replaced the original defendant in this case, Col. Paul J. Evanko, as the State Police Commissioner.

> for any licensee, under any circumstances, to
> permit in any licensed premises or in any place
> operated in connection therewith any lewd,
> immoral or improper entertainment . . . .

Conchatta also sought relief as to one of the Statute's implementing regulations, 40 Pa. Code § 5.32(b) (2006) (hereinafter "the Regulation"), which provides in pertinent part:

> A licensee may not permit an employee, servant,
> agent, event/tournament/contest participant or a
> person engaged directly or indirectly as an
> entertainer in the licensed establishment or a room
> or place connected therewith, to be in contact or
> associate with the patrons in the establishment,
> room or place for a lewd, immoral, improper or
> unlawful purpose.

Under Pennsylvania law, violation of the Statute is a misdemeanor that can result in a fine of up to five thousand dollars and imprisonment for a period of three months to one year, as well as to suspension or revocation of the liquor license. See 47 Pa. Cons. Stat. Ann. § 4-494(a), (b) (2005). Violation of the Regulation can also result in a fine and license suspension or revocation. The Commissioner asserts that there have been no criminal convictions under the challenged portions of the Statute and Regulation, and that they are enforced solely through a civil regulatory process.

In the District Court, Conchatta alleged that the Statute and Regulation (collectively, the "Challenged Provisions") are unconstitutional under the First Amendment because they are impermissibly overbroad and vague on their face. Conchatta also alleged that the Challenged Provisions are unconstitutional as applied to it. Following an evidentiary hearing, the District Court denied Conchatta's motion for a preliminary injunction in April 2001, concluding that Conchatta had demonstrated neither a likelihood of success on the merits nor that it would suffer irreparable harm without an injunction. The Court declined to address Conchatta's overbreadth and vagueness claims. In anticipation of a decision related to the Statute that was due to

4

come down from the Supreme Court of Pennsylvania, the Court stayed further proceedings in the case and closed the matter administratively, subject to a motion to reopen.

In May 2001, Conchatta appealed the District Court's denial of its motion for a preliminary injunction. This Court affirmed in a non-precedential per curiam opinion, with a dissent. Conchatta, Inc. v. Evanko, 83 Fed. App'x 437 (3d Cir. 2003). The majority found that Conchatta had made "a strong case that the statute is overbroad," but had failed to demonstrate irreparable harm under the preliminary injunction standard. Id. at 441. In dissent, Judge Roth concluded that the Statute was overbroad and also found that the irreparable harm requirement had been satisfied. Id. at 444-46.

The Pennsylvania Supreme Court decision anticipated by the District Court, Purple Orchid, Inc. v. Pennsylvania State Police, 813 A.2d 801 (Pa. 2002), was issued in December 2002. There, the court held that the Statute was not unconstitutional under the First Amendment as applied to a bar featuring semi-nude dancing. Id. at 812-13. The Purple Orchid court explicitly declined, however, to consider whether the Statute was unconstitutionally overbroad or vague on its face. Id. at 804-05.

The District Court returned the case to active status, and Conchatta filed a motion for summary judgment in April 2004. The Commissioner then filed a cross-motion for summary judgment. In February 2005, the District Court held that the terms "immoral" and "improper" in the Challenged Provisions were unconstitutionally vague, but that the term "lewd" was not. Conchatta, Inc. v. Evanko, No. 01-01207, 2005 WL 426452, *2 (E.D. Pa. Feb. 23, 2005). The Court therefore granted Conchatta's summary judgment motion in part, ordering that the terms "immoral" and "improper" be excised from the Challenged Provisions, but denied the motion with respect to the remainder of the challenged language. Id. at *3. The Court did not address Conchatta's overbreadth claim.

Conchatta now appeals the denial in part of its motion for summary judgment, with respect to the non-excised portions of the Challenged Provisions. The Commissioner does not appeal

5

the District Court's order that the terms "immoral" and "improper" be excised. We therefore consider the Challenged Provisions in their new form, with the single term "lewd" replacing the three terms "lewd," "immoral," and "improper."

## II. DISCUSSION

### A. Overbreadth

"The showing that a law punishes a 'substantial' amount of protected free speech, 'judged in relation to the statute's plainly legitimate sweep,' suffices to invalidate <u>all</u> enforcement of that law, 'until and unless a limiting construction or partial invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally protected expression.'" <u>Virginia v. Hicks</u>, 539 U.S. 113, 118-19 (2003) (quoting <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 613, 615 (1973)). A litigant may challenge a statute as substantially overbroad under this principle "even though the conduct of the [litigant] is clearly unprotected and could be proscribed by a law drawn with the requisite specificity." <u>New York v. Ferber</u>, 458 U.S. 747, 769 (1982). This broad standing rule is rooted in the view that a statute's "'very existence may cause others not before the court to refrain from constitutionally protected speech or expression.'" <u>Peachlum v. City of York, Pennsylvania</u>, 333 F.3d 429, 438 (3d Cir. 2003) (quoting <u>Broadrick</u>, 413 U.S. at 612). Thus, in making their overbreadth claim, Conchatta may assert the rights of any liquor licensees subject to the Challenged Provisions.

The Supreme Court has noted, however, that "when considering a facial challenge it is necessary to proceed with caution and restraint, as invalidation may result in unnecessary interference with a state regulatory program." <u>Erznoznik v. City of Jacksonville</u>, 422 U.S. 205, 216 (1975); <u>Broadrick</u>, 413 U.S. at 613 (holding that the invalidation of an ordinance on overbreadth grounds is "strong medicine" to be used "sparingly and only as a last resort").

#### 1. <u>Availability of a Limiting Construction</u>

In determining the scope of a state law challenged for

overbreadth, this Court must "consider any limiting construction that a state court or enforcement agency has proffered."[2] <u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>, 455 U.S. 489, 494 n.5 (1982). A narrowing construction can save an otherwise unconstitutional statute by eliminating the statute's substantial overbreadth. <u>See</u> <u>Hicks</u>, 539 U.S. at 118-19. If a statute is "readily susceptible" to a limiting interpretation that would make it constitutional, the statute must be upheld, but "we will not rewrite a state law to conform it to constitutional requirements." <u>Virginia v. Am. Booksellers Ass'n</u>, 484 U.S. 383, 397 (1988).

Although Pennsylvania courts and agencies have addressed the Statute–which has been in effect in Pennsylvania since the early 1950s–on numerous occasions, no clear narrowing construction of the Challenged Provisions has emerged. The Pennsylvania Supreme Court has twice considered the Statute's constitutionality. In <u>In re Tahiti Bar</u>, 150 A.2d 112 (Pa. 1959), the court rejected an as-applied First Amendment challenge to the Statute by a bar that featured erotic dancing, holding that Pennsylvania's authority to regulate liquor consumption gave it almost limitless power to regulate speech where liquor is consumed. <u>Id.</u> at 115-16. The court also concluded that, taken as a whole, the phrase "lewd, immoral, or improper" was not unconstitutionally vague. <u>Id.</u> at 118-19. Without specifically construing the challenged terms, the court upheld the lower court's finding that the performance in plaintiffs' bar was "lewd or obscene as well as immoral under any definition of these terms." <u>Id.</u> at 119 (internal quotation marks omitted).

More recently, in <u>Purple Orchid</u>, the Pennsylvania Supreme Court disavowed its analysis in <u>Tahiti Bar</u>, noting that under recent United States Supreme Court precedent, a state does not have plenary authority over the regulation of expression in liquor licensee establishments. <u>Purple Orchid</u>, 813 A.2d at

---

[2] For purposes of Conchatta's overbreadth claim, we assume that the terms of the Challenged Provisions are not unconstitutionally vague.

806; see 44 Liquormart, Inc. v. Rhode Island, 517 U.S. 484, 515-16 (1996). The Purple Orchid court nonetheless upheld the Statute under the First Amendment as applied to a club featuring erotic dancing. 813 A.2d at 812-13. The court did not adopt a limiting construction of the Statute, stating only that the Statute "apparently has not been applied to prohibit erotic dancing outright in establishments licensed to serve alcohol. Instead, it has been interpreted by enforcement officials as requiring the dancers to cover themselves, at a minimum, with what are commonly known as 'pasties' and a 'G-string.'" Id. at 803.

In Pennsylvania Liquor Control Board v. J.P.W.G., Inc., 489 A.2d 992 (Pa. Commw. Ct. 1985), which involved a challenge to a fine imposed under the Statute on a bar featuring topless dancing, the Pennsylvania Commonwealth Court noted that "we have found no case law and none has been cited to us construing the terms lewd, immoral or improper as used in the Code." Id. at 995 (emphasis omitted). Without limiting the scope of those terms, the court stated that "we are convinced that partial nudity of a female dancer in a public bar is at the very least improper and, in our opinion, also falls within the broad dictionary language defining immoral and lewd." Id. (footnote omitted).

Other decisions in the lower Pennsylvania courts have similarly considered whether some form of erotic dancing falls within the terms of the Challenged Provisions without explicitly construing or narrowing those terms. See, e.g., Rising Sun Entm't, Inc. v. Pa. Bureau of Liquor Control Enforcement, 829 A.2d 1214, 1217 (Pa. Commw. Ct. 2003) (stating that "topless dancing performed in licensed establishments can be lewd, immoral or improper entertainment per se"); BJJ Enter., Inc. v. Commonwealth, 481 A.2d 1253, 1255 (Pa. Commw. Ct. 1984) (upholding revocation of liquor license under "lewd, immoral or improper" language where performances included "topless dancing girls who wore panties or G-strings which permitted one to see the pubic area"); Pa. Liquor Control Bd. v. Tris-Dad, Inc., 448 A.2d 690, 691-92 (Pa. Commw. Ct. 1982) (finding statutory standard satisfied where there was evidence that female dancers wore wet nightgowns and displayed various parts of their bodies during their performances). We have found no Pennsylvania

court or agency holdings that contain an explicit narrowing construction of the Challenged Provisions. Cf. 181 South v. Fischer, No. 05-1882, 2006 WL 1984497, at *6 (3d Cir. Jul. 18, 2006) (recognizing a narrowing construction of statute where state court explicitly construed a prohibition on "lewd and immoral activities" as a prohibition on entertainment where "'the predominant object and natural effect upon the observers-patrons of one portion of the performance [is] erotic excitation.'") (citation omitted).[3]

Although the Commissioner can point to no explicit narrowing construction of the Challenged Provisions, he argues that an implicit narrowing construction has emerged based on the fact that Pennsylvania courts and agencies have applied the challenged statutory language only to live dancing involving exposure of genitals or involving physical sexual contact between patrons and dancers. We disagree. The fact that the Challenged Provisions have been applied exclusively to such entertainment indicates only that such entertainment falls within the scope of the Challenged Provisions; it does not define the limits of the Challenged Provisions' reach. Past practice does not constitute a narrowing construction because it does not bind the enforcement agency, which could, at some point in the future, decide to target a broader range of establishments. This possibility of expanded enforcement creates a chilling effect. See Hicks, 539 U.S. at 119 (expressing concern over the possibility that "the threat of enforcement of an overbroad law may deter or 'chill' constitutionally protected speech").

The Commissioner asserts that the Liquor Board does not intend to enforce the Challenged Provisions against "legitimate"

---

[3]Although in Pennsylvania Liquor Control Board v. CIC Investors No. 870, Ltd., 584 A.2d 1094 (Pa. Commw. Ct. 1990), the Pennsylvania Commonwealth Court held that the erotic dancing in the case satisfied the Statute because it "was a predominant appeal to prurient interests," this language has not been generally adopted by the Pennsylvania courts as a narrowing construction of terms of the Challenged Provisions. 584 A.2d at 1096 (quoting Tahiti Bar, 150 A.2d at 367).

theatrical or concert performances. However, the mere fact that an agency does not currently intend to apply a statute in an unconstitutional manner cannot have the effect of an explicit limiting construction. See Odle v. Decatur County, Tenn., 421 F.3d 386, 397 (6th Cir. 2005) ("neither proof that an ordinance as currently applied has no unconstitutional effect, nor assurances offered by the relevant local authorities that the ordinance will not be put to such an effect in the future, constitute 'constructions' of the ordinance, as that term is ordinarily understood"); see also Ways v. City of Lincoln, Neb., 274 F.3d 514, 519-20 (8th Cir. 2001) (rejecting city's assurances that a statute was "not intended to apply to artistic venues" in considering an overbreadth challenge). But see SOB, Inc. v. County of Benton, 317 F.3d 856, 865 (8th Cir. 2003) (rejecting an overbreadth challenge where a county affidavit noted the absence of theaters in the county and averred a lack of intention to enforce the regulation against theatrical productions with "serious artistic merit"). In short, the current enforcement intentions of the Liquor Board are of no relevance to our analysis of the scope of the Challenged Provisions.

Thus, we conclude that no limiting construction of the Challenged Provisions has been established by Pennsylvania state courts or agencies. Nor are the plain terms of the Challenged Provisions "readily susceptible" to such a construction; the general prohibition on "lewd" entertainment in any licensed establishment does not lend itself to an obvious narrowing interpretation. See Giovani Carandola, Ltd. v. Bason, 303 F.3d 507, 517 (4th Cir. 2002) ("[W]e cannot adopt a limiting construction unless a measure is 'readily susceptible' to such an interpretation by state courts, and certainly cannot rewrite state law.") (internal citation omitted); cf. Schultz v. City of Cumberland, 228 F.3d 831, 850 (7th Cir. 2000) (finding statute susceptible to limiting construction where statutory prohibition on commercial establishments "regularly featur[ing]" nudity could be construed more narrowly as applying only to establishments "always featur[ing]" nudity) (emphasis added).

2. Scope of the Challenged Provisions

As no narrowing construction is available, we must

10

consider the scope of the Challenged Provisions based on their plain terms. At the outset, we note that Challenged Provisions proscribe "lewd entertainment" in a notably broad array of contexts. The parties agree that approximately 15,000 to 18,000 establishments have liquor licenses in Pennsylvania and are subject to the Challenged Provisions.[4] Many of these are ordinary restaurants, but dinner theaters, comedy clubs, and other venues that present some form of entertainment and serve alcohol are also subject to the Challenged Provisions. Moreover, the reach of the Statute extends to all places "operated in connection" with licensed premises. This language presumably applies to performance spaces that serve alcohol in the lobby during intermission. Thus, the Challenged Provisions do not solely apply to nude dancing, which "falls only within the outer ambit of the First Amendment's protection," City of Erie v. Pap's A.M. 529 U.S. 277, 289 (2000) (plurality opinion), but also apply to a variety of performances that are entitled to the full protection of the First Amendment, as long as the venues serve alcohol. See Conchatta, 83 Fed. App'x at 444 (noting that the Statute covers "plays, musicals, concerts, political satires,

---

[4] "Performing arts facilities" and "public venues" are statutorily-defined establishments that show mainstream performances and have a large seating capacity. See 47 Pa. Stat. Ann. § 1-102 (2005). These establishments are subject to the challenged language in the Statute if they serve alcohol, see 47 Pa. Stat. Ann. § 4-412(f)(4) (2005); 47 Pa. Stat. Ann. § 4-413(g) (2005), but the Commissioner states and Conchatta does not dispute that these establishments are not subject to the Regulation. See 47 Pa. Stat. Ann. § 4-493(10) (2005); 40 Pa. Code § 5.32(b) (2006). Thus, Conchatta may assert the rights of these establishments only with respect to the Statute. Of the approximately 18,000 liquor licensees in Pennsylvania, thirty-one qualify as "performing arts facilities" and forty-eight are "public venues." These separate categories are not critical to our analysis here because, although our finding of overbreadth is related to the impact on these establishments, it is also based on the impact on numerous other liquor licensees that do not qualify in these categories, such as small theaters and other small performance spaces, as well as restaurants or bars that show movies.

11

comedies, ballets, dramas, singing performances, dancing performances, poetry readings, and art shows throughout Pennsylvania") (Roth, J., dissenting); see also Nat'l Endowment for the Arts v. Finley, 524 U.S. 569, 603 (1998) ("art is entitled to full protection because our 'cultural life,' just like our native politics, 'rests upon [the] ideal' of governmental viewpoint neutrality") (citation omitted).[5]

As for what expression falls within the prohibition on "lewd entertainment," we, like the plaintiffs, find this to be a difficult question to answer. The Pennsylvania courts have construed "lewd entertainment" to include entertainment involving fully exposed breasts, genital exposure, or genital touching. As noted above, however, the statutory definition has not been limited to include only entertainment with those characteristics, and this exacerbates the chilling effect on a wide range of First Amendment protected expression when the Challenged Provisions are applied to artistic, theatrical, and other non-adult entertainment venues. We need not here predict, however, how expansively the Pennsylvania courts might construe the prohibition because we conclude, in light of the broad array of forms of entertainment to which the prohibition is applicable, that even assuming the Challenged Provisions proscribe no more than entertainment involving nudity or genital touching, those Provisions are unconstitutionally overbroad.

3. Secondary Effects and the Standard of Review

We accept the Commissioner's assertion that the Challenged Provisions were enacted to limit negative secondary effects resulting from the combination of "lewd" entertainment

---

[5] Conchatta notes that in an April 5, 2001 opinion (See Plaintiffs' Brief at Addendum 1), the Pennsylvania Liquor Control Board interpreted the Statute to apply to video images. Under this interpretation, the Statute would apply to a movie shown at a bar or other location selling alcohol.

12

and consumption of alcohol.[6] See Purple Orchid, 813 A.2d at 810 (concluding that one of the Statute's purposes is "to address the negative secondary effects that follow when nude dancing is performed in establishments that are licensed to serve alcohol"). Such an intention is unrelated to the content of the affected expression. See City of Erie, 529 U.S. at 296 (holding that a regulation aimed at the secondary effects of adult entertainment establishments was "unrelated to the suppression of the erotic message" and therefore content-neutral) (plurality opinion); Carandola, 303 F.3d at 515 (finding a statute to be content-neutral because it targeted the secondary effects of lewd conduct on liquor-licensed premises).

Where, as here, a regulation burdens expression but is content-neutral, we apply the intermediate scrutiny standard enunciated by the Supreme Court in United States v. O'Brien, 391 U.S. 367 (1968). See Texas v. Johnson, 491 U.S. 397, 407 (1989) (stating that O'Brien test applies where "the governmental interest in question [is] unconnected to expression"); 181 South, 2006 WL 1984497, at *4-5 (applying O'Brien test to liquor-license regulation of adult entertainment establishments).[7] Under the O'Brien test, a regulation is constitutional only if (1) "it is within the constitutional power of

---

[6] Legislation intended to curb the negative secondary effects of entertainment establishments is often aimed at "crime rates, property values, and the quality of the city's neighborhoods." City of Los Angeles v. Alameda Books, Inc., 535 U.S. 425, 434 (2002).

[7] We note that the fact that the Challenged Provisions implicate Pennsylvania's authority to regulate liquor consumption does not affect the level of scrutiny applied. Although the Supreme Court held in California v. LaRue, 409 U.S. 109, 118-19 (1972) that a state has special authority under the Twenty-first Amendment to limit certain First Amendment rights in locations serving alcohol, that holding was overturned in 44 Liquormart, 517 U.S. at 516. See 181 South, 2006 WL 1984497, at *4 (noting that after 44 Liquormart, states no longer have enhanced authority under the Twenty-first Amendment to regulate expression in places that serve alcohol).

13

the Government"; (2) it "furthers an important or substantial governmental interest"; (3) "the governmental interest is unrelated to the suppression of free expression"; and (4) "the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." O'Brien, 391 U.S. at 377; see also 181 South, 2006 WL 1984497, at *4. The fourth element of this test is particularly relevant to our overbreadth inquiry here.[8]

We conclude that the Challenged Provisions are substantially overbroad under the fourth O'Brien requirement because the asserted government interest is not applicable to a large number of affected establishments. With respect to nude or topless dancing at clubs or bars, an interest in limiting harmful secondary effects may justify the Challenged Provisions. See Carandola, 303 F.3d at 516 (noting that nude or topless dancing has "'a long history of spawning deleterious effects'" and "in most cases a city or state need carry only a minimal burden to demonstrate its interest in regulation of such activity") (citation omitted). With respect to ordinary theater and ballet performances, concerts, and other similar forms of entertainment, however, the Commissioner provides no evidence that the Challenged Provisions prevent harmful secondary effects, and we are exceedingly doubtful that they do. Without evidence of such a connection, there is no state interest to justify a substantial fraction of the Challenged Provisions' scope. The statutory language clearly could have been drafted more narrowly to specifically target secondary effects associated with nude or topless dancing. See Erznoznik, 422 U.S. at 217-18 ("Where First Amendment freedoms are at stake . . . precision of

---

[8] There is no question, as to the first three prongs of the O'Brien test, that Pennsylvania has the constitutional authority to enact legislation such as the Challenged Provisions, that Pennsylvania's interest in limiting certain secondary effects related to liquor-licensed venues is substantial, and that this interest is unrelated to the suppression of free expression. See 181 South, 2006 WL 1984497, at *5 (finding O'Brien test satisfied with respect to state regulation targeting secondary effects of erotic entertainment in liquor-licensed venues).

drafting and clarity of purpose are essential."); Carandola, 303 F.3d at 517 (observing, with approval, that "jurisdictions with . . . concerns [about adult entertainment] have adopted narrower regulations, targeting only those venues where secondary effects are likely to arise, while leaving other speech unaffected."). Thus, the restriction on First Amendment freedoms is significantly greater than is essential to the furtherance of the government interest, and the Challenged Provisions fail the fourth requirement of the O'Brien test.

Several of our sister circuits have similarly found that a secondary effects rationale cannot justify regulation of such a broad array of ordinary entertainment venues. See, e.g., Schultz, 228 F.3d at 849 ("When the government restricts speech not associated with harmful secondary effects, then the government cannot be fairly said to be regulating with those secondary effects in mind and the regulation extends beyond its legitimate reach."); Carandola, 303 F.3d at 516-17 (finding likelihood of success on overbreadth claim where liquor-license regulation swept "far beyond bars and nude dancing establishments" to burden "a multitude of mainstream musical, theatrical, and dance productions – from musical comedy to ballet to political satire to flamenco dance"); Odle, 421 F.3d at 399 (finding an ordinance unconstitutionally overbroad because it "'makes no attempt to regulate only those expressive activities associated with harmful secondary effects and includes no limiting provisions. Instead, [it] sweeps within its ambit expressive conduct not generally associated with' the kinds of harmful secondary effects it was designed to prevent.") (quoting Triplett Grille, Inc. v. City of Akron, 40 F.3d 129, 136 (6th Cir. 1994)); Ways, 274 F.3d at 519-20 (rejecting secondary effects rationale and finding ordinance to be unconstitutionally overbroad because it could be applied to "theater performances, ballet performances, and many other forms of live entertainment").

Based on the reasoning above, we conclude that the Challenged Provisions "punish[] a 'substantial' amount of protected free speech, 'judged in relation to [their] plainly legitimate sweep," and that they are therefore unconstitutionally

overbroad.[9]

## B. Other Claims

In addition to its facial overbreadth claim, Conchatta asserts that the Challenged Provisions are unconstitutional as applied, and that the Challenged Provisions are unconstitutionally vague on their face. Because we strike down the Challenged Provisions as substantially overbroad, we need not consider either of these claims.

## III. CONCLUSION

For the foregoing reasons, we reverse the judgment of the District Court with respect to the denial in part of Conchatta's motion for summary judgment, and we remand the case for further proceedings consistent with this opinion.

---

[9] The Commissioner argues that even if the Challenged Provisions are overbroad, this overbreadth can be eliminated by severance of the subsections of the Liquor Code applying the Statute to statutorily-defined "performing arts facilities" and "public venues." See supra note 5. As noted above, a high seating capacity, among other requirements, is necessary to qualify in these categories, and only 79 of the more than 15,000 liquor-licensed establishments in Pennsylvania qualify. Those that do not qualify include low seating capacity performance spaces that serve alcohol. Severance of the relevant provisions would therefore do little to limit the substantial overbreadth of the Challenged Provisions.